## CASE NO. 16-13745

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

SEAN FREIXA
Plaintiff/Appellant,

v.

PRESTIGE CRUISE
SERVICES LLC, et al.
Defendants/Appellees.

Appeal From the United States District Court
For The Southern District Of Florida
Case No. 15-22732-Civ-Cooke/Torres

_____

## APPELLANT'S INITIAL BRIEF
_____

Sam J. Smith
Loren B. Donnell
BURR & SMITH, LLP
111 2nd Ave. N.E., Suite 1100
St. Petersburg, Florida 33701
813-253-2010

Keith M. Stern
LAW OFFICE OF KEITH M
STERN, P.A.
8333 N.W. 53rd St., Suite 450
Doral, Florida 33166
 (561) 299-3703

Robert S. Norell
ROBERT S. NORELL, P.A.
7350 N.W. 5th St.
Plantation, Florida 33317-1605
(954) 617-6017

Attorneys For Appellant

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and 11th Cir. R. 26.1-1, Plaintiff/Appellant Sean Freixa hereby submits this Certificate of Interested Persons and Corporate Disclosure Statement:

1.  Boutwell, Angelica Leigh – Attorney for Defendant/Appellee Prestige Cruise Services LLC, Prestige Cruise Holdings, Inc., Prestige Cruises International, Inc.

2.  Burr & Smith, LLP – Attorneys for Plaintiff/Appellant Sean Freixa

3.  Cooke, Marcia G. – District Court Judge, Southern District Florida, Miami Division

4.  Donnell, Loren B. - Attorney for Plaintiff/Appellant Sean Freixa

5.  Foley & Lardner, LLP - Attorney for Defendant/Appellee Prestige Cruise Services LLC, Prestige Cruise Holdings, Inc., Prestige Cruises International, Inc.

6.  Freixa, Sean – Plaintiff/Appellant

7.  Law Offices of Keith M. Stern, P.A. - Attorney for Plaintiff/Appellant Sean Freixa

8.  Neuberger, Mark J. – Attorney for Defendant/Appellee Prestige Cruise Services LLC, Prestige Cruise Holdings, Inc., Prestige Cruises International, Inc.

9.  Norell, Robert Scott – Attorney for Plaintiff/Appellant Sean Freixa

10. Perlman, Larry S. – Attorney for Defendant/Appellee Prestige Cruise Services LLC, Prestige Cruise Holdings, Inc., Prestige Cruises International, Inc.

11. Prestige Cruise Holdings, Inc. – Defendant/Appellee

12. Prestige Cruises International, Inc. – Defendant/Appellee

13. Prestige Cruise Services LLC - Defendant/Appellee

14. Robert S. Norell, P.A. – Attorney for Plaintiff/Appellant Sean Freixa

15. Smith, Sam – Attorney for Plaintiff/Appellant Sean Freixa

16. Stern, Keith Michael - Attorney for Plaintiff/Appellant Sean Freixa

17. Torres, Edwin G. – Magistrate Judge, Southern District Florida, Miami Division

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff/Appellant Sean Freixa respectfully submits that oral argument will assist the Court in the prompt resolution of this appeal by enabling counsel to answer any questions regarding the proper calculation of the regular rate for compliance with the requirements of the retail or service establishment exemption, 29 U.S.C. § 207(i), when as here the worker was paid a salary and deferred commissions that were earned, if at all, in the month prior to their payment.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES .......................................................... iv

JURISDICTIONAL STATEMENT ............................................... viii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................. 1

STATEMENT OF CASE AND FACTS ......................................... 2

STANDARD OF REVIEW ....................................................... 10

SUMMARY OF THE ARGUMENT .......................................... 11

ARGUMENT ...................................................................... 15

I.      SECTION 7(i) OF THE FLSA REQUIRES THAT THE REGULARE
        RATE EXCEED ONE AND ONE-HALF THE APPLICABLE FEDERAL
        MINIMUM WAGE RATE IN EACH WORKWEEK ...................... 15

        A.      The Statutory Language in Section 7(i)(1) Supports The Requirement
                that Regular Rate Be Analyzed On a Workweek Basis ........... 16

        B.      The Regulations, Opinion Letters, and Field Operations Handbook of
                the Department of Labor Have Consistently Required That the
                Regular Rate Be Analyzed on a Workweek Basis ................... 22

II.     PRESTIGE FAILED TO MEET ITS BURDEN OF ESTABISHING THAT
        IT PAID FREIXA MORE THAN ONE AND ONE-HALF MINIMUM
        WAGE DURING EACH WORKWEEK      27

        A.      Deferred Commissions Should Have Been Apportioned Over the
                Workweeks During Which They Were Earned Versus Averaging
                Them Over Freixa's Entire Employment ................................ 28

B.    Freixa Was Not Paid More Than One and One-Half the Applicable
      Minimum Wage for Each Workweek He Was Employed By Prestige
      ................................................................................................ 35

CONCLUSION ............................................................................................ 37

CERTIFICATE OF COMPLIANCE ............................................................ 38

CERTIFICATE OF SERVICE ..................................................................... 40

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Anderson v. Mt. Clemens*, 328 U.S. 680 (1946) ........................................... 18

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ...................... 19

*Brennan v. Lauderdale Yacht Basin, Inc*., 493 F.2d 188
  (5th Cir. 1974) ............................................................................. 19, 30, 31

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).............................. 21

*Burton v. Tampa Housing Auth.*, 271 F.3d 1274 (11th Cir. 2001) .............. 17

*Environmental Defense Fund v. Marsh,* 651 F.2d 983 (5th Cir. 1981)........ 10

*Forster v. Smartstream, Inc.*, No. 3:13-CV-866-J-PDB, 2016 WL 70605
  (M.D. Fla. Jan. 6, 2016)............................................................................. 33

*Glenn v. General Motors Corp*., 841 F.2d 1567 (11th Cir. 1988)............... 20

*Henriquez v. Total Bike, LLC*, No. 13-20417-CIV, 2013 WL 6834656
  (S.D. Fla. Dec. 23, 2013)........................................................................... 34

*Howard v. City of Springfield, Illinois*, 274 F.3d 1141 (7th Cir. 2001) ....... 23

*Integrity Staffing Solutions, Inc. v. Busk*, 328 U.S. 680 (2014).................... 18

*Jelus v. All Creatures Animal Hospital, Inc.*, 1:15-cv-184,
  2016 WL 3074406 (S.D. Ohio May 27, 2016)......................................... 25

*Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251
  (11th Cir. 2001) ................................................................................. passim

*Kuntsmann v. Aaron Rents, Inc.,* 903 F. Supp. 2d 1258 (N.D. Ala. 2012) .. 33

*Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428 (11th Cir. 1994).................... 10

*Lukins v. Classic Cruises d/b/a Regent Seven Seas*, 09:21951 (S.D. Fla.) ................................................................................................... 7

*Malooly v. Prestige Cruise Services LLC et al.*, 10:62088 (S.D. Fla.) ................................................................................................. 7

*Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294 (N.D.N.Y. 1978) . 21

*Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985) ...... 18

*Overnight Motor Co. v. Missel*, 316 U.S. 572 (1942) ............................ 24, 28

*Owopetu v. Nationwide CATV Auditing Servs., Inc.,* 5:10-cv-18, 2011 WL 883703 (D. Vt. Mar. 11, 2011) ............................................ 32, 34

*Rodriguez v. Home Heroes, LLC,* No. 8:13-cv-2711-T-26AEP, 2015 WL 668009 (M.D. Fla. Feb. 17, 2015) ............................................... 33

*Russello v. United States*, 464 U.S. 16 (1983) ............................................. 17

*Schwind v. EW & Assocs., Inc.,* 371 F. Supp. 2d 560 (S.D.N.Y. 2005) ....... 34

*Selz v. Investools, Inc.,* 2:09-CV-1042, 2011 WL 285801 (D. Utah Jan. 27, 2011) .............................................................................. 35

*Showers v. Norwegian Cruise Line*, 14:24584 (S.D. Fla.) ............................ 7

*Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637 (11th Cir. 1984) .... 10

*Triple "AAA" Co. v. Wirtz*, 378 F.2d 884 (10th Cir. 1967) ......................... 20

*U.S. v. Silva*, 443 F.3d 795 (11th Cir. 2006) ................................................. 16

*United States v. Fisher*, 289 F.3d 1329 (11th Cir. 2002) ............................. 16

*United States v. Ibarguen-Mosquera*, 634 F.3d 1370 (11th Cir. 2011) ........ 10

*United States v. ILCO, Inc.,* 996 F.2d 1126 (11th Cir. 1993) ...................... 10

*United States v. Svete,* 556 F.3d 1157 (11th Cir. 2009) ............................... 10

*Vazquez v. TWC Admin. LLC*, 2:14-CV-07621-CAS, 2015 WL 2084486
   (C.D. Cal. May 4, 2015) ........................................................................ 31

*Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.,*
   246 F. Supp. 2d 886 (S.D. Ohio 2003) ................................................. 32

*Walling v. Youngerman–Reynolds Hardwood Co*.,
   325 U.S. 419 (1945) ....................................................................... 24, 28

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303
   (7th Cir. 1986) ................................................................................ 19, 20

*Whatley v. CNA Ins. Co.*, 189 F.3d 1310 (11th Cir. 1999) .......................... 10

## Statutes

28 U.S.C. § 1291 .......................................................................................... vi

28 U.S.C. § 1331 .......................................................................................... vi

29 U.S.C. § 206 .............................................................................................. 4

29 U.S.C. § 207 .................................................................................... passim

## Other Authorities

DOL Field and Operations Handbook, ch. 30b05(b) ................................... 25

DOL WHD Admr. Op. Letter, 1971 WL 33072 (May 27, 1971) ................ 26

DOL WHD Admr. Op. Letter, 1982 WL 213487 (July 13, 1982) .............. 31

DOL WHD Admr. Op. Letter, 2005 WL 3308615 (October 24, 2005)....... 26

**Regulations**

29 C.F.R. § 516.2 ......................................................................... 36

29 C.F.R. § 778 ................................................................... passim

29 C.F.R. § 778.104 ...................................................................... 23

29 C.F.R. § 778.106 ...................................................................... 21

29 C.F.R. § 778.109 ...................................................................... 23

29 C.F.R. § 778.118 ........................................................................ 5

29 C.F.R. § 778.119 ..................................................... 5, 13, 24, 29

29 C.F.R. § 778.120 ............................................................. passim

29 C.F.R. § 779.419 ................................................. 12, 24, 26, 28

## JURISDICTIONAL STATEMENT

Jurisdiction is proper in the United States Court of Appeals in the Eleventh Circuit under 28 U.S.C. § 1291, which grants jurisdiction of appeals from all final decisions of the district courts of the United States. On July 22, 2015, the Plaintiff/Appellant Sean Freixa ("Freixa") filed a complaint against Defendants/Appellees Prestige Cruise Services LLC and related entities ("Prestige") for violations of the overtime provisions of the Fair Labor Standards Act. The district court has federal subject matter jurisdiction over this matter under 28 U.S.C. § 1331. On May 23, 2016, the district court below granted summary judgment in favor of Prestige ruling Freixa was exempt from the Fair Labor Standards Act's overtime provisions pursuant to section 7(i) of the Fair Labor Standards Act. Doc. 74. A final judgment was entered for Prestige on May 23, 2016. Doc. 75. On June 17, 2016, Freixa timely appealed the district court's order and entry of judgment in favor of Prestige. Doc. 78. This appeal is from a final order or judgment by the district court that disposes of all Freixa's claims.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

Whether the district court erred by calculating  the regular rate for purposes of determining compliance with section 7(i) of the Fair Labor Standards Act  by dividing all compensation paid during Freixa's employment by all hours he worked during his employment when the evidence showed that the calculation of Frexia's regular rate should have been done on a workweek basis as required by section 7(i)(1) and Defendants provided no evidence to the contrary to meet their burden to apply the section 7(i) exception to its compliance with the overtime requirements of the Fair Labor Standards Act.

## STATEMENT OF CASE AND FACTS

On July 22, 2015, Sean Freixa filed a complaint against his former employer Prestige Cruise Services LLC and related entities ("Prestige") for their failure to pay him any overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 207.  Doc. 1 (Complaint); Doc. 37, at 2 (Defs' Statement of Facts in Support of MSJ).  Freixa worked as a Personal Vacation Consultant ("PVC") for Prestige from December 7, 2013 until December 19, 2014.  Doc. 37, at 1-3. During this time, Freixa's primary job was to sell cruises directly to customers.  *Id*. at 4.  Specifically, Freixa made outbound telemarking calls to cruise customers to sell cruise packages for Prestige's Oceania Cruises and Regent Seven Seas cruise lines.  Doc. 47, at 20 (Pl's Statement of Facts in Response to Defs' MSJ).  Freixa performed this work at Prestige's call center in Miami, Florida.  Doc. 37, at 2.

Throughout his employment as a PVC, Prestige paid Freixa $500 per week, plus commissions in some months on his sales if a minimum number of sales bookings and other requirements were met.  *Id*. at 9-10.  Commissions were earned on a monthly basis.   Doc. 42-13 (White Depo., at 45:3-17; 68:9-14); Doc. 42-14 (Crlenjak Depo., at 68:13-23); Doc.42-16 (Defs' Answer to Interrogatory No. 6). If any commissions were earned by Freixa, they were paid to him during the subsequent month for commissions that were actually earned during the preceding month.  Doc. 42-14 (Crlenjak Depo., at 68:13-23); Doc. 42-16 (Defs' Answer to

Interrogatory No. 6).  For example, the commissions earned by Freixa for bookings sold by him during the month of January 2014 were paid by Prestige on February 28, 2014.  Doc.  42-16 (Defs' Answer to Interrogatory No. 6) and Doc.42-7[1] (Freixa Sales Production Bookings) (together showing the month in which sales were made and when commissions for those bookings were paid).  Prestige's Rule 30(b)(6) corporate representative (who is Prestige's Senior Vice President of Human Resources), Prestige's Vice President of Consumer Sales, and Prestige's Legal Counsel each testified that commissions are paid monthly for commissions earned from the previous month's sales.  Doc. 42-13 (White Depo., at 45:3-17; 68:9-14); Doc. 42-14 (Crlenjak Depo., at 68:13-23); Doc. 42-12 (Guidicy Depo., at 59:7-18).

Prestige admits Freixa worked overtime hours.  Doc. 37, at 7; Doc. 42-19 (Defs' Answer to Plaintiff's Requests for Admission).  Prestige encouraged Freixa to work late hours and weekends.  *See* Doc. 42-10 at DEF-804.  Freixa frequently worked as many as six (6) to seven (7) days each  week, averaging 60 to 65 hours per week, and often worked up to 70 hours in a single week.[2]  Doc. 47, at 7.  Prestige did not track Freixa's actual hours worked and Freixa was not paid

---

[1] Doc. 42-7 was filed under seal in the district court and Freixa has moved the district court to unseal this document.  Doc. 88.
[2] For purposes of summary judgment, Prestige accepted Freixa's allegation that he worked at least an average of 60 hours a week.  Doc. 36, at 2.

overtime compensation for hours he worked in excess of 40 hours per week. *Id*.

Instead, Prestige claims Freixa is not entitled to overtime compensation because he

was exempt from the overtime requirements of the FLSA under section 7(i) of the

FLSA. Doc. 36; Doc. 42-19.

Under section 7(i) of the FLSA (otherwise known as the retail and sales

exemption):

> No employer shall be deemed to have violated subsection (a) [the maximum
> hour requirements under the FLSA] by employing any employee of a retail
> or service establishment for a workweek in excess of the applicable
> workweek specified therein, if (1) the regular rate of pay of such employee
> is in excess of one and one-half times the minimum hourly rate applicable to
> him under section 206 of this title, and (2) more than half his compensation
> for a representative period (not less than one month) represents commissions
> on goods or services.

29 U.S.C. § 207(i).

For purposes of this appeal, Freixa does not dispute that Prestige is a retail

sales establishment or that more than half of Freixa's total earnings in a

representative period consisted of commissions. However, Freixa disputes whether

Prestige satisfied its burden in establishing that his regular rate of pay exceeded

one and one-half times the applicable minimum wage for every hour worked in all

workweeks in which overtime hours are worked.

The federal minimum wage rate for 2014 was $7.25 per hour. *See* 29 U.S.C.

§ 206(a). Therefore, Prestige has the burden to establish that during each

workweek that Freixa was employed during 2014, Prestige paid him a regular rate

that exceeds one and one-half times the federal minimum wage, which equals $10.88 per hour, for every hour Freixa worked in overtime weeks. To calculate the regular rate paid to Freixa, any commissions paid to Freixa are added to the weekly salary of $500 per week. *See* 29 C.F.R. § 778.118. Commissions earned over a monthly period are "apportioned back over the workweeks of the period during which they are earned." 29 C.F.R. § 778.119. In months where Freixa did not earn any commissions at all—because he did not meet the minimum sales bookings and other requirements under Prestige's commission plan—such as July 2014 and November 2014, Freixa's regular rate is calculated by dividing his salary of $500 by his hours worked (i.e., at least 60 hours per week), which is equal to $8.33 per hour [$500.00/60 hours = $8.33 per hour]. Doc. 42-6 (no commissions paid in August or December 2014 since no commissions were earned in July or November 2014); Doc. 42-7 (no commissions earned in July and November 2014). Freixa's regular rate for workweeks in months in which no commissions were earned does not exceed $10.88 per hour and Prestige cannot meet its burden of showing it complied with the section 7(i) requirement of paying Freixa more than one and one-half times minimum wage for each and every hour worked during every workweek in 2014.

The chart below demonstrates that Freixa has numerous workweeks where his regular rate is less than one and one-half times minimum wage when the

regular rate is calculated by allocating his commissions, if any, in the months in which they were actually earned to the workweeks worked during that particular month and adding his $500 per week salary and dividing his total overall compensation by his hours worked in the workweek:[3]

| Week Start | Week End | Salary | Comm. Allocated | Hours | Reg. Rate | 7(i) Compliant |
|---|---|---|---|---|---|---|
| 6/28/2014 | 7/4/2014 | 500.00 | 290.10 | 60 | 13.17 | Yes |
| 7/5/2014 | 7/11/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 7/12/2014 | 7/18/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 7/19/2014 | 7/25/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 7/26/2014 | 8/1/2014 | 500.00 | 137.16 | 60 | 10.62 | No |
| 8/2/2014 | 8/8/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/9/2014 | 8/15/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/16/2014 | 8/22/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/23/2014 | 8/29/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/30/2014 | 9/5/2014 | 500.00 | 1,391.16 | 60 | 31.52 | Yes |
| 9/6/2014 | 9/12/2014 | 500.00 | 1,563.57 | 60 | 34.39 | Yes |
| 9/13/2014 | 9/19/2014 | 500.00 | 1,563.57 | 60 | 34.39 | Yes |
| 9/20/2014 | 9/26/2014 | 500.00 | 1,563.57 | 60 | 34.39 | Yes |
| 9/27/2014 | 10/3/2014 | 500.00 | 997.89 | 60 | 24.96 | Yes |
| 10/4/2014 | 10/10/2014 | 500.00 | 243.65 | 60 | 12.39 | Yes |
| 10/11/2014 | 10/17/2014 | 500.00 | 243.65 | 60 | 12.39 | Yes |
| 10/18/2014 | 10/24/2014 | 500.00 | 243.65 | 60 | 12.39 | Yes |
| 10/25/2014 | 10/31/2014 | 500.00 | 243.65 | 60 | 12.39 | Yes |
| 11/1/2014 | 11/7/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 11/8/2014 | 11/14/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 11/15/2014 | 11/21/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 11/22/2014 | 11/28/2014 | 500.00 | 0 | 60 | 8.33 | No |

---

[3]For these calculations, 60 hours per week were used since the Court and Defendants adopted this amount of hours for summary judgment purposes; however, Freixa testified that he regularly worked 60 to 65 hours per week and had some workweeks where his hours exceed 70 hours. Doc. 42-3.

Prestige was well aware of the requirements of section 7(i) of the FLSA, but failed to track the hours worked by PVCs, including Freixa, and never paid overtime compensation in workweeks where the PVCs were paid less than one and one-half minimum wage. Three years before Freixa's case was filed, in July 2012, Prestige's legal counsel, Jill Guidicy, conducted an analysis of whether PVCs met the section 7(i) exemption. Doc. 42-12 (Guidicy Depo., at 74-78). Guidicy identified certain PVCs who did not meet the exemption requirements and should have been paid overtime. *Id.* Guidicy determined that going forward PVCs must contemporaneously record their hours worked and cautioned that they "must begin clocking in and out including lunch breaks" to ensure compliance with the FLSA. Doc. 42-11 *Id.* at 80:22-6. However, the record evidence reflects that that Prestige never implemented Guidicy's directive or maintained records of PVCs' actual hours worked.[4] *Id.* at 81:12-83:7. Further, Guidicy recommended Prestige conduct quarterly reviews for compliance with the FLSA. *Id.* However, during years 2013, 2014, and 2015 (before Freixa's lawsuit was filed), Prestige never conducted another test of whether its commission payment plan complied with

---

[4] Prestige failed to do so even in light of a Department of Labor investigation and multiple lawsuits alleging wage and hour violations. *See* Doc. 42-15 (Victor Gonzalez Depo., at 22:17-25; 23:1-22; 24:1-21) (former Executive Vice President of Passenger Services discussing the DOL investigations); Doc. 47, at 10 (citing civil actions *Lukins v. Classic Cruises d/b/a Regent Seven Seas*, No. 09:21951 (S.D. Fla.), *Malooly v. Prestige Cruise Services LLC et al.*, No. 10:62088 (S.D. Fla.), and *Showers v. Norwegian Cruise Line*, 14:24584 (S.D. Fla.)).

section 7(i) and, instead, continued its practice of broadly classifying all PVCs as exempt under section 7(i) without regard to the amounts paid to the PVCs and without tracking their hours worked. *Id.*

On January 25, 2016, Prestige moved for summary judgment against Freixa asserting he was exempt from the FLSA's overtime provisions under section 7(i). On May 23, 2016, the District Court ruled for Prestige. In relevant part, the district court found Freixa's "regular rate of pay exceed[ed] one and one-half times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked" by dividing Freixa's hourly wages and commission earnings from his entire employment over all the hours he was assumed to have worked during the entire year. The District Court did so because it found it was "'not possible or practicable to allocate' Plaintiff's commissions by each workweek since he received lump-sum commission payments for cruise vacation sales he completed in prior weeks." Doc. 74, at 4 (*quoting* 29 C.F.R. § 778.120). However, no record evidence was submitted by Prestige establishing that it was impossible or impractical to allocate Freixa's commissions over the weeks in which the commissions were earned. Instead, Prestige admitted that Freixa's commissions were earned on a monthly basis and paid the following month such that the commissions should have been apportioned over the workweeks in the month that the commissions were earned. *See* Doc. 42-16 (Defs' Answer to

Interrogatory No. 6). Further, the record evidence demonstrated that there were multiple work weeks in the months of July 2014 and November 2014 in which Freixa earned no commissions whatsoever, such that Freixa's regular rate of pay in those weeks was—at most—$8.33 per hour and thus below the threshold to be exempt under section 7(i). *See* Doc. 42-7 (no commissions earned in July and November 2014).

On June 17, 2016, Freixa timely appealed the district court's order granting summary judgment to Prestige, the order denying Freixa's motion for summary judgment, and the entry of judgment in favor of Prestige. *See* Doc. 78.

## STANDARD OF REVIEW

An appellate court reviews an appeal from an order granting summary judgment *de novo*. *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999). The court must use "the same legal standards as those that control the district court in determining whether summary judgment is appropriate." *Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637, 638 (11th Cir. 1984) (citing *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir. 1981)). Summary judgement is "appropriate only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Whatley*, 189 F.3d. at 1313 (quoting Fed. R. Civ. P. 56(c)).

The appellate court has *de novo* review to independently determine proper statutory interpretation, which is at issue in this matter, when there is a question of law. *See United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1383 (11th Cir. 2011) (citing *United States v. Svete,* 556 F.3d 1157, 1161 (11th Cir. 2009)); *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 431 (11th Cir. 1994) (citing *United States v. ILCO, Inc.,* 996 F.2d 1126, 1130 (11th Cir. 1993)).

## SUMMARY OF THE ARGUMENT

Section 7(i) of the Fair Labor Standards Act ("FLSA") provides employers who qualify as a retail or service establishment with an exception to the requirement of paying overtime compensation to workers who work more than 40 hours in a workweek. *See* 29 U.S.C. § 207(i).  In order to avoid having to pay overtime compensation in workweeks that exceed 40 hours, among other things, an employer is required to prove that it compensated the worker at issue at a regular rate that is in excess of one and one-half times the federal minimum wage rate. *See* 29 U.S.C. § 207(i)(1). The district court below erred in granting summary judgment for Prestige by holding that Prestige complied with section 7(i)(1) by calculating Freixa's regular rate by dividing the compensation he earned throughout his employment by the total hours the court assumed he worked during his entire employment rather than calculating his regular rate during each workweek that he was employed as required by section 7(i)(1).

Section 7(i)(1) uses the term, "workweek" to modify the exclusion from having to pay overtime compensation and for determining that the regular rate exceeds the federal minimum wage rate leaving no doubt that the analysis of whether the regular rate exceeds one and one-half the federal minimum wage must be performed on a workweek basis.  In addition, this Court has already addressed whether compliance with the section 7(i)(1) regular rate requirement is determined

on a workweek basis and held that the analysis must be conducted on a workweek by workweek basis. *See Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1256-57 (11th Cir. 2001) (regular rate must be determined by dividing the total compensation paid during a workweek by the number of hours worked).

Further support that section 7(i)(1) must be analyzed on a workweek basis is be found in the pronouncements made by the United States Department of Labor on this subject through its own regulations, opinion letters, field operations handbook, and fact sheet, which have remained consistent on this issue for more than 45 years.

Section 7(e) of the FLSA defines the "regular rate" as including "all remuneration paid to, or on behalf of, the employee except payments expressly excluded by the seven numbered clauses of section 7(e)." 29 C.F.R. § 779.419(b). Because Freixa was paid a salary of $500.00 per week plus commissions earned on bookings sold for cruises if Freixa met the requirements for the payment of commissions, his salary plus commissions, if any, must be added together to calculate his regular rate.

In response to an interrogatory served by Freixa, Prestige admitted that it paid commissions in the month after they were earned and provided the specific dates that each commission was earned. Doc. 42-16 (Answer to Interrogatory No. 6). Because the commissions were paid in the month following the month in

which they were earned, it is necessary "that the commission[s] be apportioned back over the workweeks of the period during which [they] were earned." *See* 29 C.F.R. § 778.119.

Rather than apportioning the commissions over the prior month as required, the district court calculated Freixa's regular rate by adding all of Freixa's salary payments and all of his commissions paid throughout his employment and dividing this total amount of compensation by all the hours Prestige assumed Freixa worked during his employment.  The district court acknowledged that the general rule for calculating the regular rate requires the calculation to be performed for each workweek, but held that "federal regulations permit 'some other reasonable and equitable method' to distribute deferred commissions in cases where it is 'not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually eared or reasonably presumed to earned each week.'"  Doc. 74, at 4 (*quoting* 29 C.F.R. § 778.120).

The district court provided no analysis to support its holding that it was not possible or practical to apportion the commissions over the workweeks in the month they were earned and Prestige failed to provide the district court with any factual support for this holding.  Because the district court failed to explain its holding and because the commissions paid in this case could easily have been

apportioned over the workweeks that they were earned, summary judgment for Prestige must be reversed.

When Freixa's commissions are properly allocated to the workweeks in which they were earned, it is clear that Prestige cannot meet its burden of establishing compliance with section 7(i)(1) during each workweek of Freixa's employment. Freixa did not earn any commissions during the months of July and November 2014.  *See* Doc. 42-6 (Freixa Earnings Statements), Doc. 42-7 (Freixa Sales Production Bookings).   As a result, Freixa was paid only his salary of $500.00 for workweeks in July and November 2014.   Assuming that Freixa worked 60 hours per week as the court must since his testimony was that he worked at least this many hours per week, his regular rate is calculated by dividing his compensation by his hours, which results in a regular rate of $8.33 per hour. This regular rate is less than the one and one-half times the federal minimum wage rate, which is $10.88 [$7.25 x 1.5 = $10.88].   Thus, summary judgment for Prestige must be reversed.

## ARGUMENT

**I.    SECTION 7(i) OF THE FLSA REQUIRES THAT THE REGULAR RATE EXCEED ONE AND ONE-HALF THE APPLICABLE FEDERAL MINIMUM WAGE RATE IN EACH WORKWEEK**

The "retail or service establishment" exemption provides that:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a **workweek** in excess of the applicable **workweek** specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i) (emphasis added).

Accordingly, to meet the first prong of section 7(i), the employer must demonstrate that it paid the employee in excess of one and one-half times the minimum wage during each workweek where overtime hours are worked.  If the employer fails to meet this threshold requirement in a given workweek, the employer may not take advantage of the retail or service establishment exemption, and must instead pay the employee overtime for hours worked over 40 during that workweek.

**A.    The Statutory Language in Section 7(i)(1) Supports The Requirement that Regular Rate Be Analyzed On a Workweek Basis**

The plain language of section 7(i)(1) requires that evaluation of the first prong of the retail or service establishment exemption -- whether the employee was paid more than one and one half times the minimum wage -- be done on a workweek basis.

"The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and ambiguous, there is no need for further inquiry." *U.S. v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (*quoting United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002)).  In the instant case, there is no need to look past the plain language of the statute.  The plain language of section 7(i)(1) requires that Prestige pay Freixa more than one and one-half times the minimum wage for each workweek in which Prestige utilized the exemption to avoid paying Freixa overtime.

Though the statutory language contained in section 7(i)(1) is clear, "[a]biding by another canon of statutory construction, '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Burton v. Tampa Housing*

*Auth.*, 271 F.3d 1274, 1279 (11th Cir. 2001) (*quoting Russello v. United States*, 464 U.S. 16, 23 (1983)).  Notably, while expressly tying the one and one-half times minimum wage requirement of section 7(i)(1) to the workweek, section 7(i)(2) requires that more than one half of compensation represent commissions "for a representative period (not less than one month)."  Had Congress intended for a period longer than a workweek to be applied to section 7(i)(1), it undoubtedly knew how to do so, as evidenced by the representative period requirement of section 7(i)(2).  It is abundantly clear that section 7(i)(1) must be evaluated on a workweek basis, and the district court erred in averaging Freixa's pay over the entire duration of his employment instead of on a workweek basis to derive his regular rate of pay.

Moreover, the question of whether section 7(i) must be evaluated on a workweek basis is not an issue of first impression in this Circuit.  Indeed, there is binding authority from this Circuit demonstrating the requirement that the regular rate of pay for purposes of section 7(i) be determined on a workweek basis.  In *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251 (11th Cir. 2001), this Court vacated a district court's summary judgment granted to an employer who failed to pay overtime to its commissioned employee based on the employer's claim of exemption under section 7(i).  The Court found that in order to decide whether the employer satisfied the one and one-half times minimum wage component of

section 7(i), the Court had to determine the employee's regular rate of pay by dividing the total compensation during the workweek by the number of hours worked. *Id*. at 1256-57. Because the employer failed to meet its obligation to maintain and preserve records of the number of hours worked per week, the number of hours worked per week was a genuine issue of material fact precluding summary judgment. *Id*. Where, as here, an employer fails to comply with its' duty to maintain adequate records of hours worked, the employee may prove his hours worked by reasonable inference. *Anderson v. Mt. Clemens*, 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds as stated in Integrity Staffing Solutions, Inc. v. Busk*, 328 U.S. 680 (2014).

The district court's averaging of Freixa's pay over the entire duration of his employment is contrary to additional, longstanding, Eleventh Circuit authority. In *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985), a case analyzing a compensation plan for commissioned automobile salesmen, this Circuit cautioned that while a pay period may be longer than a workweek, "[a] mere alteration of the employer's records that reflects excess commissions earned in the preceding period being applied toward the minimum wage for the current period will not suffice. The employee must *actually* receive the minimum wage each pay period." The *Olson* Court additionally found that workweeks may not be averaged in order to avoid the obligation to pay overtime. *Id*. at 1574-75.

In addition, the former Fifth Circuit examined the overtime due to commissioned yacht salesmen in *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188 (5th Cir. 1974).[5]  In *Lauderdale Yacht Basin*, the Court held that "an employer is not exempt from the payment of additional overtime merely because the annual payment an employee receives exceeds minimum wage and minimum rate overtime payments." *Id.* at 190. The Court remanded the case back to the district court to adopt a "reasonable and equitable method" to allocate commissions earned to the workweeks in which they were actually earned or reasonably presumed to have been earned.  *Id.* at 191.  Notably, unlike in *Lauderdale Yacht Basin*, and as discussed *infra*, there is no difficulty in allocating Freixa's commissions to the particular workweeks in which they were earned and the district court erroneously found without explanation that it was not possible or practicable to allocate Freixa's commissions by workweek.    Though the district court cited *Klinedinst*, *supra*, for the proposition that the FLSA generally requires employers to pay employees overtime for hours worked in excess of forty hours per week, the court inexplicably failed to rely on the holdings in *Klinedinst* and the other Eleventh Circuit authority, and instead cited *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986).  In *Walton*, the Seventh Circuit held that

[5] Decisions of the former Fifth Circuit filed prior to October 1, 1981, such as *Lauderdale Yacht Basin*, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

there was no need to break down commissioned salesmen's pay week by week because commissioned salesmen have fluctuating hours and income. However, the Seventh Circuit provided no statutory analysis whatsoever for its holding, citing only a single case, *Triple "AAA" Co. v. Wirtz*, 378 F.2d 884, 887 (10th Cir. 1967). Yet, *Triple "AAA" Co.* adds nothing to the analysis because *Triple "AAA" Co.* does not address section 7(i) and the employees in *Triple "AAA" Co.* were paid a fixed salary each week. *Id*. at 886. *Triple "AAA" Co*, which addressed the issue of how overtime is calculated for salaried employees under the FLSA, is both factually and legally distinguishable for the instant case. This Court should give no weight to a *Walton* because it is completely devoid of legal analysis on the issue at hand, particularly in the face of this Court's own authority.[6]

A straightforward application of the section 7(i) mandates that the determination of whether Freixa was paid in excess of one and one-half the minimum wage be made for each workweek. As the Supreme Court has recognized, "failure to pay the statutory minimum on time may be … detrimental to maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers … Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their

---

[6] Notably, in *Glenn v. General Motors Corp*., 841 F.2d 1567 (11th Cir. 1988), this Court has previously disagreed with the reasoning of the Seventh Circuit in *Walton* on a separate issue.

well-being until such sums are paid at a future date." *Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 302 (N.D.N.Y. 1978) (*quoting Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945) (internal quotations omitted)).   In holding that the workweek is the relevant pay period under the FLSA, the court in *Sam Dell's Dodge Corp.* found that even for employees whose incomes exceed the minimum wage range during some workweeks,  a "better paid salesman with a family would be hard pressed if he were obliged to suffer a few weeks at less than minimum wages."[7]  *Id*.; *see also, O'Neil*, 324 U.S. at 707 (liquidated damage provision of FLSA "constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers … that double payment must be made in the event of delay in order to

---

[7] This principle is also embodied in 29 C.F.R. § 778.106, which provides in pertinent part:

> The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of the overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the FLSA will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

inure restoration of the worker to that minimum standard of well-being.") (internal quotations omitted).

Due to receiving zero commissions, Freixa failed to receive a rate sufficient to meet the 7(i) exemption for four consecutive weeks in July 2014 (the weeks beginning on July 5, July 12, July 19, and July 26) and then again for four consecutive weeks in November 2014 (the weeks beginning on November 1, November 8, November 15 and November 22), yet Prestige failed to pay Freixa overtime pay for the hours he worked over 40 during those weeks.  This is precisely what 7(i) is designed to prevent.  *Klinedinst*, 260 F.3d at 1256 ("The function of a commission exemption as embodied by section 7(i) is to ensure that workers who are paid on a commission basis are guaranteed to receive at least the legislated minimum wage without requiring them to work overtime for it.").  The district court's application of Freixa's pay over the entire duration of his employment to derive his regular rate is directly contrary to the statutory mandate of section 7(i)(1) and contravenes the purpose of the 7(i) exemption.

**B.**     **The Regulations, Opinion Letters, and Field Operations Handbook of the Department of Labor Have Consistently Required That the Regular Rate Be Analyzed on a Workweek Basis**

Further support that section 7(i) should be analyzed on a workweek basis can be found in the many pronouncements of the United States Department of Labor ("DOL") on this subject through its own regulations, opinion letters, field

operations handbook, and fact sheet. The DOL's longstanding interpretation that the regular rate is determined on a workweek basis and its specific pronouncement that the regular rate must be calculated on a workweek basis for compliance with Section 7(i) of the FLSA is entitled to respect and should be persuasive to the Court. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1225 (11th Cir. 2010) (acknowledging that while the DOL's opinions and interpretations are not binding law, the Court will accord the DOL respect and give its opinions weight as a source of persuasive authority); *see also Howard v. City of Springfield, Illinois*, 274 F.3d 1141, 1146 (7th Cir. 2001) (explaining that while 29 C.F.R. § 778 is an interpretative bulletin from the DOL, "courts may rely on it as persuasive evidence both of Congress's legislative and the Secretary's regulatory intent").

To start, in 29 C.F.R. § 778.104, the DOL states "it is necessary to compute the regular hourly rate of . . . employees during each workweek." It continues in 29 C.F.R. § 778.109 to explain that "[the FLSA] takes a single workweek as its standard" and rejects averaging hours over two or more weeks. The DOL confirms this rule is "applicable to pieceworkers and employees paid on a commission basis" and that it is "necessary to determine the hours worked and the compensation earned by . . . commission employees on a weekly basis." *Id.*

23

Unequivocally, the DOL addresses section 7(i) "with respect to the 'regular rate'" calculation in 29 C.F.R. § 779.419 (titled "Dependence of the section 7(i) overtime pay exemption upon the level of the employee's 'regular rate' of pay"):

> '[T]he regular rate of pay of such employee,' when employed 'for a workweek in excess of the applicable workweek specified' in section 7(a), must be 'in excess of one and one-half times the minimum hourly rate applicable to him under section 6.'

> The employee's 'regular rate' of pay must be computed, in accordance with the principles discussed above, on the basis of his hours of work in that particular workweek and the employee's compensation attributable to such hours.

> The hourly rate thus obtained must be compared with the applicable minimum rate of pay of the particular employee under the provisions of section 6 of the Act.

Through this regulation, the DOL describes that the calculation of the regular rate of pay of an employee who may come within section 7(i) as "a simple one" and relies on the well-established regular rate calculation performed on a weekly basis in *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419 (1945) and *Overnight Motor Co. v. Missel*, 316 U.S. 572 (1942) to explain how the regular rate should be calculated for determining compliance with section 7(i).

Particularly relevant here, in 29 C.F.R. § 778.119, the DOL provides that to determine the regular rate for commission employees when the commission cannot be paid until sometime after the regular pay day in a workweek, an employer must apportion the commissions over the workweeks of the period during which the

commissions were earned.  The employee must then receive additional overtime due for each week during the period in which he or she worked in excess of 40 hours.  *Id*.  The DOL makes a limited exception to this rule only "if it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week" and provides two methods that may be used— allocation of equal amounts to each week or each hour worked during the workweeks at issue.  29 C.F.R. § 778.120; *see Jelus v. All Creatures Animal Hospital, Inc.*, 1:15-cv-184, 2016 WL 3074406 (S.D. Ohio May 27, 2016) (explaining that if it is not possible or practical to allocate commissions or bonuses to particular workweeks under 29 C.F.R. § 778.120, the DOL would allow the allocation of commissions by each week or each hour in the pay period); *see also* DOL Field and Operations Handbook, ch. 30b05(b) (reaffirming application of these principles).

Consistently, over the last 45 years, the DOL has rejected attempts by employers to average the regular rate for commission employees over extended weeks when the analysis can be accomplished on a workweek or pay period basis. In an opinion letter issued on May 27, 1971, the Administrator was asked to evaluate whether an employer's plan to use a quarter-year period to determine the regular rate of pay for its salesmen was consistent with section 7(i)(1).  DOL WHD

Admr. Op. Letter, 1971 WL 33072, at *1 (May 27, 1971). The Administrator

stated that "[t]his method of pay would, in our opinion, be invalid as it does not

satisfy the requirements of section 7(i)(1) of the act." *Id*. The Administrator

explained, "[I]t is the Division's position that 7(i)(1) applies on a workweek basis"

and the "hourly rate averaged over the entire representative period may not be used

to satisfy the requirements of section 7(i)(1)." *Id*. The Administrator cited to 29

C.F.R. § 779.419(b) and explicitly rejected the employer's attempt to invoke 29

C.F.R. § 778.120 because the amount of earnings applicable to a particular

workweek was ascertainable. *Id*. More recently in an opinion letter issued on

October 24, 2005, the Deputy Administrator opined that an employer's plan to pay

its employees up to $70,000 per year would not necessarily comply with section

7(i) because the requirements of 7(i) must be met for each workweek and

"[a]verages of compensation for two or more weeks do not satisfy the 'regular rate'

requirement of the retail or service establishment exemption." DOL WHD Admr.

Op. Letter, 2005 WL 3308615, at *1 (October 24, 2005). The employer was

informed that it "must assess the applicability of section 7(i) on a workweek-by-

workweek basis for each employee." *Id*. In June 2008, the DOL issued Fact

Sheet #20, reaffirming this position that to be exempt under section 7(i) "the

employee's regular rate of pay must exceed one and one-half times the applicable

minimum wage for every hour worked in a workweek in which overtime hours are worked."[8]

Numerous courts, some discussed below, have relied on the DOL's established pronouncements for calculating the regular rate for commissioned employees to determine whether one and one-half times the federal minimum wage rate has been met before denying workers overtime compensation.

## II. PRESTIGE FAILED TO MEET ITS BURDEN OF ESTABISHING THAT IT PAID FREIXA MORE THAN ONE AND ONE-HALF MINIMUM WAGE DURING EACH WORKWEEK

It is well established that the employer "bears the burden of proving the applicability of a FLSA exception by clear and affirmative evidence." *Klinedinst*, 260 F.3d at 1254 (quotation marks omitted).  In the district court below, Prestige made no attempt to show that it had complied with the section 7(i)(1) requirement that Freixa's regular rate of pay exceed one and one-half times the federal minimum wage rate in each workweek during Freixa's employment.  Instead, because Prestige failed to keep any records of the hours Freixa worked, Prestige attempted to comply with the regular rate requirement of section 7(i) by dividing all of the pay earned by Freixa during his entire employment by all of the hours it assumed Freixa worked during his employment.  *See* Doc. 37, at ¶ 7, 14.  This calculation ignored the fact that Freixa's regular rate was less than one and one-

---

[8] DOL, Fact Sheet #20, at www.dol.gov/whd/regs/compliance/whdfs20.pdf. (accessed 10/16/2016).

half the federal minimum wage during workweeks worked in July and November 2014 because he earned no commissions for July and November 2014. Doc. 42-7 (Freixa Sales Production Bookings).

### A. Deferred Commissions Should Have Been Apportioned Over the Workweeks During Which They Were Earned Versus Averaging Them Over Freixa's Entire Employment

As set forth above, this Court has ruled that for purposes of section 7(i)(1) of the FLSA, "[t]he 'regular rate of pay' is the 'hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed' and 'by its very nature must reflect all payments which the parties had agreed shall be received regularly during the workweek, exclusive of overtime payments.'" *Klinedinst,* 260 F.3d at 1256 (*quoting* 29 C.F.R. § 779.419(b); *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419 (1945)). The Court held that "[t]he regular rate is determined by dividing the employer's total compensation during the workweek by the number of hours worked." *Id.; see also* 29 C.F.R. § 779.419(b) (citing *Overnight Motor Co. v. Missel,* 316 U.S. 572 (1942)).

Section 7(e) of the FLSA defines the "regular rate" as including "all remuneration paid to, or on behalf of, the employee except payments expressly excluded by the seven numbered clauses of section 7(e)." 29 C.F.R. § 779.419(b). Because Freixa was paid a salary of $500.00 per week plus commissions earned on bookings sold for cruises if Freixa met the requirements for the payment of

commissions, his salary plus commissions, if any, must be added together to calculate his regular rate.   In response to an interrogatory served by Freixa, Prestige admitted that commissions were paid in the month after they were earned. *See* Doc. 42-16 (Answer to Interrogatory No. 6).   For example, commissions earned between January 1, 2014 and January 31, 2014 were paid on February 28, 2014. *Id.*  Because the commissions were paid in the month following the month in which they were earned, it is necessary "that the commission[s] be apportioned back over the workweeks of the period during which [they] were earned." 29 C.F.R. § 778.119.

Rather than apportioning the commissions over the prior month as required, Prestige convinced the district court to calculate Freixa's regular rate by adding all of Freixa's salary payments and all of his commissions paid throughout his employment and dividing this total amount of compensation by all of the hours Prestige assumed Freixa worked during his employment.  The district court found that Freixa's total earnings during his employment equaled $70,343.03 and that Freixa had stated on an initial statement of claim that he worked an average of 60 hours per week for the 50 weeks he was employed.  Doc. 74, at 5.  Using this formula, the district court calculated a regular rate of $23.45 per hour, which the court held exceeded the one and one-half times minimum wage requirement under section 7(i).  The district court acknowledged that the general rule for calculating

the regular rate requires the calculation to be performed for each workweek, but held that "federal regulations permit 'some other reasonable and equitable method' to distribute deferred commissions in cases where it is 'not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually eared or reasonably presumed to earned each week.'"  Doc. 74, at 4 (*quoting* 29 C.F.R. § 778.120).  The district court provided no analysis to support its holding that it was not possible or practical to apportion the commissions over the workweeks in the month they were earned and Prestige failed to provide the district court with any factual support for this holding. Because the district court failed to explain its holding, summary judgment for Prestige must be reversed.

In a similar case in which a district court determined the regular rate by dividing all of the compensation by all of the hours worked, the Former Fifth Circuit in *Brennan v. Lauderdale Yacht Basin, Inc.* reversed the court's finding that the minimum wage and overtime provisions of the act were satisfied.  *See* 493 F.2d at 191.  On remand, the Former Fifth Circuit held that the district court must sort through "fluctuating compensation, fluctuating pay intervals, and deferred compensation which may be difficult to identify as being earned in particular workweeks" and "adopt some 'reasonable and equitable method' to allocate the commission 'among workweeks of the period in proportion to the amount of

30

commission actually earned or reasonably presumed to be earned each week.'" *Id.* (*quoting* 29 C.F.R. § 778.120 (1971)).

Nothing in section 778.120 supports calculating an average regular rate by dividing all compensation earned during a worker's entire employment and dividing by all hours worked where the time period during which the commissions are earned is known.  To the contrary, when the time period during which the commissions are earned is known as it is in the case at bar where the commissions where earned over a month period, section 778.120 provides that, if is not possible to allocate the commissions to the actual workweek in which it was earned, the commissions may be apportioned over all of the workweeks in the month in equal amounts, or in proportion to the hours worked in each workweek in the month. *See* 29 C.F.R. § 778.120(b); 29 C.F.R. § 778.120(a)(1); *Vazquez v. TWC Admin. LLC*, 2:14-CV-07621-CAS, 2015 WL 2084486, at *10 (C.D. Cal. May 4, 2015) (section 778.120 *permits a choice* of allocating equal amounts of commission either to each workweek or to each hour worked) (citing DOL WHD Admr. Op. Letter, 1982 WL 213487, at *1 (July 13, 1982).

Even though possible, the district court did not attempt to allocate the commissions to the workweeks during which they were earned.  *Lauderdale Yacht Basin* and 29 C.F.R. § 778.120 do not support the district court's averaging of the regular rate over Freixa's entire employment; instead, because Prestige admitted

that the commissions were earned in the month prior to payment, the commissions could easily have been allocated to the workweeks during which they were earned.

Other courts have rejected averaging over a period longer than a workweek in determining whether an employee is paid more than one and one-half minimum wage. For example, in *Owopetu v. Nationwide CATV Auditing Servs., Inc.,* 5:10-cv-18, 2011 WL 883703, at *10 (D. Vt. Mar. 11, 2011), the court rejected the employer's attempt to establish the regular rate by dividing all compensation by all hours worked. The court noted that because the defendant was able to allocate the commissions that were paid to specific workweeks it was not impossible or impractical to calculate the regular rate on a workweek basis.

Similarly, in *Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.,* 246 F. Supp. 2d 886, 895 (S.D. Ohio 2003), the court rejected the defendant's argument that the plaintiffs' *average* hourly rate was substantially higher than 150% the minimum wage. The court calculated the minimum wage requirement on a week-by-week basis and permitted the case to go forward "with respect to the weeks during which [the plaintiffs] earned less than one and one-half times the minimum wage." *Id.*

The district court cited three cases from courts in the Eleventh Circuit that it believed supported its averaging of a commissioned employees total wages divided by the employees total hours and one decision, *Rodriguez v. Home Heroes, LLC,*

32

No. 8:13-cv-2711-T-26AEP, 2015 WL 668009, at *8 (M.D. Fla. Feb. 17, 2015), that did not since it focused "on single workweeks to determine the hourly pay of a commissioned employee." The three cases cited by the district court in support of its opinion are distinguishable or not well reasoned.

The district court cited *Kuntsmann v. Aaron Rents, Inc.,* 903 F. Supp. 2d 1258 (N.D. Ala. 2012), for the proposition that the court averaged the employee's base pay and commissions over a five-month period.  Doc. 74, at 4.  However, in *Kuntsmann,* the plaintiff was paid a salary as a monthly draw of $4,583 that was never reduced.  903 F. Supp. 2d at 1263.  The monthly salary amounted to approximately $1,057.69 per week, which when divided by the 60 hours worked per week estimated by the plaintiff exceeded time and one-half minimum wage. Because the salary and the hours worked each workweek were the same, averaging over the five-month period was not improper.  However, here, the commissions earned, if any, varied and should have been allocated to the proper workweeks in which they were earned.

The district court also relied on *Forster v. Smartstream, Inc.*, No. 3:13-CV-866-J-PDB, 2016 WL 70605, at *7 (M.D. Fla. Jan. 6, 2016) for the proposition that the court averaged base pay and commissions over a 45-week period.  However, the court in *Forster* stated, "[a]lthough the regulations provide a regular rate of pay should be established weekly, the Court is limited to applying the bonuses during

the entire 45-week period because Forster received the bonuses intermittently and the record is silent as to what bonuses apply to what weeks." *Id.* at *6. Unlike *Forster,* in the present case, the record is not silent regarding which weeks in which the commissions were earned because Prestige identified the time periods during which the commissions were earned such that they could easily have been apportioned over the workweeks worked during this monthly period.

Finally, the district court relied on *Henriquez v. Total Bike, LLC*, No. 13-20417-CIV, 2013 WL 6834656, at *3 (S.D. Fla. Dec. 23, 2013) for the proposition that the court averaged base pay and commissions over a 128-week period. This case is not persuasive since the court in *Henriquez* failed to articulate any basis for calculating the regular rate by dividing the total compensation by total hours worked.

In its reply brief in support of its summary judgment motion, Prestige also cited *Schwind v. EW & Assocs., Inc.,* 371 F. Supp. 2d 560 (S.D.N.Y. 2005) for the proposition that it was "reasonable and equitable" to average commissions that the plaintiff earned each year and allocate them equally to each week because the plaintiff was paid only after defendants were paid. Doc. 55, at 5. Other courts have pointed out the unique facts of *Schwind.* One court noted that the plaintiff in *Schwind* was paid on a fluctuating irregular schedule. *See Owopetu*, 2011 WL 883703, at *10. Another court distinguished *Schwind* "because in *Schwind* it was

34

not possible to establish an hourly rate of pay for any given week due to the delay in commissions being paid out." *Selz v. Investools, Inc.,* 2:09-CV-1042, 2011 WL 285801, at *10 (D. Utah Jan. 27, 2011).   Unlike *Schwind,* Freixa was paid his weekly salary plus commissions, if any, that were earned on a monthly basis. There was nothing irregular about this payment plan other than the fact that Prestige failed to pay overtime compensation during workweeks where Freixa did not earn any commissions and consequently his regular rate dropped below one and one-half times minimum wage.

### B.    Freixa Was Not Paid More Than One and One-Half the Applicable Minimum Wage for Each Workweek He Was Employed By Prestige

Freixa did not earn any commissions during the months of July and November 2014.  *See* Doc. 42-6 (Freixa Earnings Statements); Doc. 42-7 (Freixa Sales Production Bookings).   As a result, Freixa was paid only his salary of $500.00 for workweeks in July and November 2014.   Assuming that Freixa worked 60 hours per week as the court must since his testimony was that he worked at least this many hours per week, his regular rate is calculated by dividing his compensation by his hours, which results in a regular rate of $8.33/ hour.  This regular rate is less than the one and one-half times the federal minimum wage rate, which is $10.88 [$7.25 * 1.5 = $10.88].  Freixa's regular rate did not exceed one

and one-half times the federal minimum wage rate in numerous workweeks.[9] Therefore, Prestige has not met its burden to show by clear and affirmative evidence that he was exempt under section 7(i) for all workweeks he was employed; accordingly, the district court's summary judgment order must be reversed.

Any disagreements regarding the actual hours worked during these workweeks "forms the basis of an active factual dispute." *See Klinedinst,* 260 F.3d at 1256–57. In *Klinedinst,* this Court held that plaintiffs' testimony regarding his hours worked was sufficient to create disputed issues of fact prohibiting summary judgment because under the FLSA the employer "was obligated to 'maintain and preserve' records of the 'regular hourly rate of pay for any workweek in which overtime compensation is due under [§ 207(a) ]....'" and "was also obligated to maintain records of the '[h]ours worked each workday and total hours worked each workweek.'" *Id.* (*quoting* 29 C.F.R. § 516.2(a)(6)(i) and (7)). Here, summary judgment must be reversed since Prestige failed to record the hours worked by Freixa even after it was told it was required to do so by its counsel, Doc. 42-11

---

[9] Freixa was paid less than 1.5 times minimum wage in the following workweeks: 7/5/14 – 7/11/14, 7/12/14 – 7/18/14, 7/19/11 – 7/25/14, 7/26/14 – 8/1/14, 11/1/14 – 11/7/14, 11/8/14 -11/14/14, 11/15/14 – 11/21/14, and 11/22/14 – 11/28/14. *See* Doc. 42-6 Freixa Earnings Statements; Doc. 42-7 Freixa Sales Production Bookings.

(Guidicy Depo., at 80-83), and Freixa estimates his average hours worked ranged from 60 to more than 70 hours per week.

## CONCLUSION

Based on this record, this Court should reverse the district court's order granting summary judgment for Prestige on the issue of its compliance with section 7(i)(1) of the FLSA because the regular rate paid to Freixa did not exceed the federal minimum wage in each workweek during his employment. The Court should remand this case to the district court with directions to apportion the commissions earned by Freixa to the workweeks worked during the specific months in which they were earned such that his regular rate can be determined on a workweek basis.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C), Appellants' brief utilizes 14-point font and contains 8,597 words.

s/ Sam J. Smith_____
Attorney

Dated: October 6, 2016                    Respectfully submitted,


                                          */s/ Sam J. Smith*
                                          Sam J. Smith
                                          Florida Bar No. 818593
                                          Loren B. Donnell
                                          Florida Bar No.  013429
                                          BURR & SMITH, LLP
                                          111 2nd Ave. N.E., Suite 1100
                                          St. Petersburg, FL  33701
                                          (813) 253-2010
                                          ssmith@burrandsmithlaw.com
                                          ldonnell@burrandsmithlaw.com

                                          Keith M. Stern
                                          Florida Bar No. 321000
                                          LAW OFFICE OF KEITH M. STERN, P.A.
                                          8333 N.W.  53rd St., Suite 450
                                          Doral, FL 33166
                                          (561) 299-3703
                                          employlaw@keithstern.com

                                          Robert S. Norell
                                          Florida Bar No. 996777
                                          ROBERT S. NORELL, P.A.
                                          7350 N.W. 5th St.
                                          Plantation, FL 33317-1605
                                          (954) 617-6017
                                          rob@floridawagelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify I electronically filed the foregoing using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record

and that a true and correct copy of Appellant's Initial Brief has been furnished by

Federal Express to counsel of record:

> Angelica Leigh Boutwell
> Mark J. Neuberger
> Larry Scott Perlman
> Foley & Lardner, LLP
> 2 S Biscayne Blvd. Suite 1900
> Miami, FL 33131

> /s/ *Sam J. Smith*
> Sam J. Smith