NO. 16-13745

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

SEAN FREIXA
Plaintiff/Appellant,

v.

PRESTIGE CRUISE SERVICES LLC, et al.
Defendants/Appellees.

_____

Appeal From the United States District Court
For the Southern District of Florida
Case No. 15-22732-Civ-Cooke/Torres

_____

**APPELLEES' ANSWER BRIEF**

_____

Mark J. Neuberger
Florida Bar No. 982024
mneuberger@foley.com
Larry S. Perlman
Florida Bar No. 0091934
lperlman@foley.com
Foley & Lardner LLP
2 South Biscayne Boulevard, Suite 1900
Miami, Florida  33131-2132
Telephone:  (305) 482-8400
Facsimile:  (305) 482-8600

Attorneys for Appellees

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The Appellees have the following additions to the list of interested persons in the appellant's brief:

1.     Brand, Jennifer S. (Associate Solicitor, U.S. Dep't of Labor)

2.     Frieden, Paul L. (Counsel for Appellate Litigation, U.S. Dep't of Labor)

3.     Gershengorn, Ian Heath (Acting Solicitor General, U.S. Dep't of Justice)

4.     NCL Corporation Ltd. (Parent Company of Defendant/Appellee Prestige Cruises International, Inc.)

5.     Norwegian Cruise Line Holdings, Ltd.  (Parent Company of NCL Corporation Ltd.) (NASDAQ Stock Symbol – NCLH)

NCLH is owned by: Star NCLC Holdings Ltd., a Bermuda company ("Genting HK"); one or more of AIF VI NCL (AIV), L.P., AIF VI NCL (AIV II), L.P., AIF VI NCL (AIV III), L.P., AIF VI NCL (AIV IV), L.P., AAA Guarantor-Co-Invest VI (B), L.P., Apollo Overseas Partners (Delaware) VI, L.P., Apollo Overseas Partners (Delaware 892) VI, L.P., Apollo Overseas Partners VI, L.P. , Apollo Overseas Partners (Germany) VI, L.P., AAA Guarantor - Co-Invest VII, L.P., AIF VI Euro Holdings, L.P., AIF VII Euro Holdings, L.P., Apollo Alternative Assets, L.P., Apollo Management VI, L.P. and Apollo Management VII, L.P.

(collectively, the "Apollo Funds"); one or more of TPG Viking, L.P., TPG Viking AIV I, L.P., TPG Viking AIV II, L.P., and TPG Viking AIV III, L.P. (collectively, the "TPG Viking Funds"); and public shareholders. As of December 31, 2015, the relative ownership percentages of NCLH's ordinary shares were approximately: Genting HK (11.1%), Apollo Funds (15.8%), TPG Viking Funds (2.3%) and public shareholders (70.8%). Genting HK has a primary listing on the Main Board of the Stock Exchange of Hong Kong Limited (Stock Symbol 0678) and a secondary listing on the Main Board of the Singapore Exchange Securities Trading Limited (Stock Symbol S21).  Apollo Global Management LLC is an affiliate of the above listed Apollo entities and is traded on the New York Stock Exchange (Stock Symbol APO).

6.    Oceania Cruises, Inc. (Parent Company of Defendant/Appellee Prestige Cruise Services, LLC; wholly owned subsidiary of Defendant/Appellee Prestige Cruises International, Inc.)

7.    Romhilt, Dean A. (Senior Attorney, U.S. Dep't of Labor)

8.    Secretary of Labor (amicus curiae)

9.    Smith, M. Patricia (Solicitor, U.S. Dep't of Labor)

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully request oral argument in this case, and believe that oral argument would aid this Court in its consideration of the important question of the proper interpretation of the Fair Labor Standards Act.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES .......................................................................v

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF THE ISSUES..................................................................2

STATEMENT OF THE CASE.....................................................................3

A.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW ...................3

B.    STATEMENT OF FACTS .................................................................3

SUMMARY OF THE ARGUMENT ......................................................6

ARGUMENT ....................................................................................10

A.    STANDARD OF REVIEW ...............................................................10

B.    RATHER THAN FOCUSING ON *WHETHER* HE WAS EXEMPT,
      MR. FREIXA IMPROPERLY FOCUSES ON *TIMING* OF
      PAYMENT ...................................................................................10

C.    AT ALL TIMES, MR. FREIXA'S REGULAR RATE OF PAY
      EXCEEDED ONE-AND-A-HALF TIMES THE MINIMUM WAGE........14

      1.    Mr. Freixa Earned Well Above 1.5 Times the Minimum Wage
            Throughout His Employment.............................................15

      2.    Given the Nature of Mr. Freixa's Commissions, It Was Proper
            to Average His Earnings Over a Longer Period of Time to
            Determine His Regular Rate. .............................................16

            a.    Allocating Mr. Freixa's Commissions Over Each
                  Workweek Was Not Practicable or Possible. ...........17

       b.     The District Court Recognized that a Week-by-Week Calculation Was Not Proper in this Case..................................19

    3.    As a Matter of Law, Averaging is a Reasonable and Equitable Method for Determining the Regular Rate of Pay. ............................21

        a.     Courts Have Consistently Permitted Averaging for Commissioned Sales Employees. ............................................21

            i.     *District Courts in this Circuit Have Approved of Averaging.*......................................................................21

            ii.    *Courts Outside this Circuit Have Allowed Averaging.*......................................................................25

            iii.   *Contrary to Mr. Freixa's Assertions, This Court Has Never Decided the Issue of Averaging.*...................29

        b.     The DOL's Authority Permits Averaging in the 7(i) Context. .......................................................................................33

D.    THERE IS NO BASIS FOR REQUIRING MONTHLY AVERAGING OF COMMISSIONS ...........................................37

    1.    Mr. Freixa Waived His Argument that Commissions Must be Allocated on A Monthly Basis. ...........................................37

    2.    There is No Basis to Require a Monthly Allocation of Commissions. .....................................................................39

E.    THE DEPARTMENT OF LABOR'S AMICUS BRIEF IS NOT ENTITLED TO DEFERENCE AND IS NOT PERSUASIVE ...................45

    1.    Courts Do Not Defer to Agency Positions Articulated in Amicus Briefs...................................................................45

    2.    The DOL's Arguments and Authority Do Not Change the Analysis. .......................................................................46

CONCLUSION ....................................................................48

CERTIFICATE OF COMPLIANCE...........................................50

CERTIFICATE OF SERVICE ...................................................................51

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) .........................................................................31

*Brennan v. Lauderdale Yacht Basin, Inc.*,
   493 F.2d 188 (5th Cir. 1974) ....................................................................31, 32

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012).........................................................................................45

*Doe v. Drummond Co.*,
   782 F.3d 576 (11th Cir. 2015) ..........................................................................10

*Forster v. Smartstream, Inc.*,
   No. 3:13-cv-866-J-PDB, 2016 U.S. Dist. LEXIS 1148 (M.D. Fla.
   Jan. 6, 2016)
       ...............................................................................21, 22, 23, 31

*FTC v. Abbvie Prods. LLC*,
   713 F.3d 54 (11th Cir. 2013) .............................................................................39

*Glenn v. General Motors Corp.*,
   841 F.2d 1567 (11th Cir. 1988) ......................................................................26

*Gregory v. First Title of Am., Inc.*,
   555 F.3d 1300 (11th Cir. 2009) ......................................................................33

*Henriquez v. Total Bike, LLC*,
   No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXIS 179592
   (S.D. Fla. Dec. 23, 2013) .................................................................6, 22, 23, 31

*Irving v. Mazda Motor Corp.*,
   136 F.3d 764 (11th Cir. 1998) ........................................................................37

*Jelus v. All Creatures Animal Hosp., Inc.*,
   2016 U.S. Dist. LEXIS 69858 (S.D. Ohio May 27, 2016)................................43

*Johnson v. Wave Comm GR LLC*,
   4 F. Supp. 3d 423 (N.D.N.Y. 2014)................................................................47

*Klinedinst v. Swift Invs., Inc.*,
260 F.3d 1251 (11th Cir. 2001) .........................................................6, 29, 30, 31

*Kuntsmann v. Aaron Rents, Inc.*,
903 F. Supp. 2d 1258 (N.D. Ala. 2012)............................................22, 23, 24, 31

*Lanfear v. Home Depot, Inc.*,
679 F.3d 1267 (11th Cir. 2012) .........................................................................45

*Marshall v. Allen-Russell Ford, Inc.*,
488 F. Supp. 615 (E.D. Tenn. 1980).......................................................12, 13, 14

*Olson v. Superior Pontiac-GMC, Inc.*,
765 F.2d 1570 (11th Cir. 1985) .........................................................................31

*Owopetu v. Nationwide CATV Auditing Servs., Inc.*,
No. 5:10-cv-18, 2011 U.S. Dist. LEXIS 24948 (D. Vt. Mar. 11,
2011) ..........................................................................................................28, 29

*Porter v. White*,
483 F.3d 1294 (11th Cir. 2007) .........................................................................10

*Rodriguez v. Home Heroes, LLC*,
No. 8:13-cv-2711-T-26AEP, 2015 U.S. Dist. LEXIS 18769 (M.D.
Fla. Feb 17, 2015) ..............................................................................................24

*Schwind v. EW & Assocs., Inc.*,
371 F. Supp. 2d 560 (S.D.N.Y. 2005) .........................................................27, 28

*Selz v. Investools, Inc.*,
No. 2:09-CV-1042 TS, 2011 U.S. Dist. LEXIS 9364 (D. Utah Jan.
27, 2011) .............................................................................................................28

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)....................................................................................33, 45

*Takacs v. A.G. Edwards & Sons, Inc.*,
444 F. Supp. 2d 1100 (S.D. Cal. 2006)..............................................................47

*Triple "AAA" Co. v. Wirtz*,
378 F.2d 884 (10th Cir. 1967) .....................................................................26, 27

*United States v. Games-Perez*,
   695 F.3d 1104 (10th Cir. 2012) ......................................................................25

*Vazquez v. TWC Admin. LLC*,
   2:14-cv-07621-CAS(FFMx), 2015 U.S. Dist. LEXIS 59527 (C.D.
   Cal. May 4, 2015) ...............................................................................43, 44

*Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*,
   246 F. Supp. 2d 886 (S.D. Ohio 2003) ...........................................................29

*Wagner v. ABW Legacy Corp., Inc.*,
   No. CV-13-2245-PHX-JZB, 2016 WL 880371 (D. Ariz. Mar. 8,
   2016) ..........................................................................................47, 48

*Walton v. United Consumers Club, Inc.*,
   786 F.2d 303 (7th Cir. 1986) (Easterbrook, J.).................................10, 25, 26, 27

**Statutes**

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 2107(a) ....................................................................................1

29 U.S.C. § 207(i) .................................................................................passim

29 U.S.C. § 216(b) .....................................................................................1

**Regulations**

29 C.F.R. § 541.600 ...................................................................................13

29 C.F.R. § 778.104 ...............................................................................24, 35

29 C.F.R. § 778.106 ...................................................................................35

29 C.F.R. § 778.109 ...................................................................................35

29 C.F.R. § 778.118 ...................................................................................36

29 C.F.R. § 778.119 ...................................................................................36

29 C.F.R. § 778.120 .............................................................................passim

29 C.F.R. § 779.419 ...................................................................................36

**Other Authorities**

DEP'T OF LABOR, FIELD OPERATIONS HANDBOOK, ch. 21h03(a) (Apr.
    7, 2016), *available at*
    https://www.dol.gov/whd/FOH/FOH_Ch21.pdf ................. 33, 34, 35, 44, 46, 47

Dep't of Labor, Wage & Hour Div., Opinion Letter, 1971 WL 33072
    (May 27, 1971)..........................................................................................42

Dep't of Labor, Wage & Hour Div., Opinion Letter, 2005 WL
    3308615 (Oct. 24, 2005)........................................................................42

Dep't of Labor, Wage & Hour Div., Opinion Letter, 1966 DOL WH
    LEXIS 161 (Aug. 10, 1966)...................................................................41

FED. R. APP. P. 4(a)(1)(A) .........................................................................1

FLA. DEP'T OF ECON. OPP., FLORIDA MINIMUM WAGE HISTORY 2000
    TO 2015, *available at* http://sitefinity.floridajobs.org/docs/default-
    source/2015-minimum-wage-increases/florida-minimum-wage-
    history-2000-2015.pdf ....................................................................4, 5

## STATEMENT OF JURISDICTION

Appellant Mr. Sean Freixa ("Mr. Freixa") commenced an action in the United States District Court for the Southern District of Florida alleging claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b). D.E. 1. The district court therefore had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

On May 23, 2016, the district court entered summary judgment in favor of the Appellees (collectively, "Prestige"). D.E. 74. The district court also entered a final judgment on May 23, 2016. D.E. 75. Mr. Freixa filed a notice of appeal on June 17, 2016. D.E. 78. Appellate jurisdiction thus exists because the district court's judgment was a final judgment that disposed of all of Mr. Freixa's claims and because Mr. Freixa's notice of appeal was timely filed within 30 days of entry of that judgment. *See* 28 U.S.C. § 2107(a); FED. R. APP. P. 4(a)(1)(A).

1

## STATEMENT OF THE ISSUES

Whether the district court correctly concluded that averaging commissions over an annual employment period was a reasonable and equitable method of calculating the regular rate of pay for the overtime exemption set forth in section 7(i) of the Fair Labor Standards Act, where the employee earned far more than 1.5 times minimum wage through large commissions that cannot be easily allocated to work performed during a particular week or month.

## STATEMENT OF THE CASE

### A. COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Mr. Freixa filed a one-count complaint alleging an overtime violation of the Fair Labor Standards Act ("FLSA") on July 22, 2015.  D.E. 1.  Prestige filed its answer on August 13, 2015.  D.E. 13.

Prestige filed a motion for summary judgment (D.E. 36) and a supporting statement of material facts (D.E. 37) on January 25, 2016.  Mr. Freixa filed his own motion for summary judgment (D.E. 42) and statement of material facts (D.E. 43) on January 28, 2016.  Prestige and Mr. Freixa filed their respective responses on February 11, 2016 (D.E. 46, 47) and February 16, 2016.  D.E. 52, 54.  Prestige filed a reply in support of its motion for summary judgment on February 22, 2016.  D.E. 55, 56.  Mr. Freixa filed a reply in support of his motion for summary judgment on February 26, 2016.  D.E. 59.

The district court granted summary judgment in favor of Prestige on May 23, 2016 (D.E. 74) and entered a final judgment (D.E. 75) that same day.  Mr. Freixa filed a notice of appeal on June 17, 2016.  D.E. 78.

### B. STATEMENT OF FACTS

At all material times, Prestige has owned and/or operated a business specializing in the sale and provision of passenger cruise services.  D.E. 1 ¶4.  Mr.

Freixa was a Prestige employee, working at Prestige's call center in Miami, Florida between December 2013 and December 2014. *Id.* ¶¶ 8, 18; D.E. 42-6.

Mr. Freixa, at all times during his employment, was a Personal Vacation Consultant ("PVC") whose job was to sell cruises directly to customers – members of the general public – who then sailed on those cruises. D.E. 42-2 at 19:21-20:1; 25:17-27:19. Mr. Freixa solicited and booked sales directly with individuals who wanted to take cruises, and he earned commissions for booking those cruises. *Id.* at 31:3-34:4.

Mr. Freixa claims that he worked an average of 60 hours per week for 50 weeks as a PVC. D.E. 1 ¶ 17.[1] The minimum wage in Florida was $7.93 in 2014. FLA. DEP'T OF ECON. OPP., FLORIDA MINIMUM WAGE HISTORY 2000 TO 2015, *available at* http://sitefinity.floridajobs.org/docs/default-source/2015-minimum-wage-increases/florida-minimum-wage-history-2000-2015.pdf.

Mr. Freixa was paid a fixed salary of $500.00 per week, or $26,000.00 per year throughout his employment. D.E. 42-2 at 36:8-19; 51:23-25. In addition to his fixed salary, Mr. Freixa was paid commissions, based on the cruise sales he made. *Id.* at 51:8-54:24; D.E. 42-8.[2] The actual percentage of the booking value

---

[1] Mr. Freixa's estimates of hours worked varied. While his complaint alleges 60-hour weeks, at later stages of the litigation, he claimed that he worked an average of 60-65 hours per week with some weeks above 70 hours. D.E. 42-3 (filed under seal in the district court).

[2] D.E. 42-8 was filed under seal in the district court.

4

commission that PVCs received increased as their number of sales increased.  D.E.

42-8.  For example, in June 2014, a PVC who had three or fewer "gross bookings"

that month would earn no commissions for each sale, whereas that same individual

would earn 1.25% of the total commissionable sale amount for each cruise sale if

he had five gross bookings that month, and would earn 3.45% on each cruise sale if

he had 31 gross bookings that month. *Id.*; D.E. 42-14 at 54:1-22.  In determining

gross bookings, Prestige took the total number of bookings in a given month and

subtracted cancellations of cruises that were booked in previous months.  D.E. 42-

14 at 65:12-25; 68:18-23.

Mr. Freixa earned a total of $70,343.03 during his employment from

December 7, 2013 through December 19, 2014.  D.E. 42-2 at 104: 8- 25; D.E. 36-

6; D.E. 42-6.

Prestige designated a representative period of one calendar year for PVCs,

including Mr. Freixa.  D.E. 42-13 at 11:17-12:5.  Mr. Freixa earned approximately

63% of his compensation in 2014 in commissions – $43,843.03 of $69,343.03,

which is more than the 50% threshold – during the representative period of 2014.

D.E. 42-6.

## SUMMARY OF THE ARGUMENT

The FLSA imposes three requirements that must be satisfied to establish the applicability of the overtime exemption set forth in 29 U.S.C. § 207(i) (the "7(i)" or "Retail Sales" exemption):

> (1) The employer is a retail or service establishment;
> (2) The regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate applicable to him under 29 U.S.C. § 206; and
> (3) More than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services.

*Henriquez v. Total Bike, LLC*, No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXIS 179592, at *7 (S.D. Fla. Dec. 23, 2013) (citing 29 U.S.C. § 207(i)); *see also Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 n.2 (11th Cir. 2001) (quoting 29 U.S.C. § 207(i)).

In his appeal, Mr. Freixa "does not dispute that Prestige is a retail sales establishment or that more than half of Freixa's total earnings in a representative period consisted of commissions." Freixa Br. at 4. Therefore, the only issue before this Court is whether Mr. Freixa's regular rate of pay exceeded 1.5 times the minimum wage.[3]

---

[3] Mr. Freixa also no longer alleges, as he did before the district court, that alleged recordkeeping violations on the part of Prestige invalidate the 7(i) exemption. The district court held that "recordkeeping errors, even if true, do not preclude [Prestige] from using the [7(i)] exemption." D.E. 74 at 5. In his brief, Mr. Freixa states that Prestige failed to comply with certain recordkeeping obligations. Freixa Br. at 8. However, alleged recordkeeping violations

Mr. Freixa earned over $70,000 during his approximately one year of employment with Prestige.  D.E. 42-2 at 104: 8- 25; D.E. 36-6; D.E. 42-6.  In addition to a $500 fixed weekly salary, Mr. Freixa's last paycheck every month included a payment representing commissions on "gross bookings" for the preceding month.  D.E. 42-8.  In determining gross bookings, Prestige took the net number of bookings in a given month and subtracted cancellations of cruises that were booked in previous months.  D.E. 42-14 at 65:12-25; 68:18-23.  The percentage of the booking value that PVCs received in commissions increased as their number of sales increased.  D.E. 42-8.

Unlike cars or other products that consumers purchase on the spot and typically may only return within a specified time frame, passenger cruises are usually booked many months in advance.  *See* D.E. 42-14 at 65:12-25; 68:18-23.  As a result, customers often cancel planned vacations for a variety of reasons, and for purposes of calculating gross bookings (in order to determine commissions), Prestige takes this into account at the time a cancellation occurs.  *Id.*  For example, a cruise vacation that was booked on June 2, 2014 but cancelled by the customer on July 2 would not count for determining the PVC's commission payment at the

---

are irrelevant for determining whether an employee's regular rate of pay was at least 1.5 times the minimum wage.

end of July.  *Id.*  However, if the customer cancelled the vacation on August 2, after the PVC already received a commission payment for that sale, then the cancellation would have figured in to his next commission payment at the end of August.

The critical point for this case is that the commission percentage for each sale varied based on the ultimate total number of sales booked and those previously booked but cancelled before sailing, and therefore it was not possible for Prestige to determine the commission allocated to a given sale on the date that sale was made.

The FLSA regulations expressly permit these sort of "deferred commission payments" and allow employers to use "some other reasonable and equitable method" to allocate commissions if "it is not possible or practicable" to allocate them among individual workweeks.  *See* 29 C.F.R. § 778.120.  Accordingly, the vast majority of courts addressing this issue in the 7(i) context have permitted "averaging" of commissions over a period of time when, like here, it is not possible or practicable to allocate commissions to a particular workweek.

Based on the facts in the record, the district court determined that it was not possible or practicable to allocate Mr. Freixa's commissions to individual workweeks.  Accordingly, the district court correctly concluded, as a matter of law, that Prestige's averaging of Mr. Freixa's commissions over his approximately one

8

year of employment was a reasonable and equitable method of calculating his regular rate of pay.

The district court's opinion was supported by the record facts and by the applicable law.  Prestige properly classified Mr. Freixa as exempt from the FLSA's overtime requirements, and summary judgment in favor of Prestige should be affirmed.

## ARGUMENT

### A. STANDARD OF REVIEW

A district court's granting of summary judgment is reviewed *de novo*. *See Porter v. White*, 483 F.3d 1294 (11th Cir. 2007). Summary judgment under Federal Rule of Civil Procedure 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Doe v. Drummond Co.*, 782 F.3d 576, 603 (11th Cir. 2015) (citing Fed. R. Civ. P. 56(c)).

### B. RATHER THAN FOCUSING ON *WHETHER* HE WAS EXEMPT, MR. FREIXA IMPROPERLY FOCUSES ON *TIMING* OF PAYMENT

Both in his appellate briefing and at the district court level, Mr. Freixa confuses the basic analysis for determining whether an employee is entitled to overtime pay. Before figuring out *how much* overtime pay an employee is entitled to, it must first be determined *whether* the employee is exempt from overtime pay.

In enacting the Retail Sales exemption, Congress sought to ensure that commissioned sales employees who work long hours during heavy sales weeks earn enough compensation *on average* to fall well above the minimum wage. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) (Easterbrook, J.) ("Commission salesmen have fluctuating hours and income, and it is unlikely that Congress meant to require employers to pay overtime in the lean

weeks when the fat weeks more than make up.")  Here, even under Mr. Freixa's unsubstantiated claim of having worked up to 70 hours per week, his $70,343 in total compensation equates to an hourly rate of $20.10 – significantly above 1.5 times the applicable minimum wage.

In his brief, Mr. Freixa admits that he was exempt for the vast majority of his employment, but claims that he was non-exempt for two specific months – July and November 2014.  Freixa Br. at 6.  Mr. Freixa's approach, which conflates *timing* of payments with the threshold question of exempt status, is not based on the correct legal standard, creates uncertainty for employers, is at odds with the purpose of FLSA exemptions, and is contrary to the vast weight of authority.

As Mr. Freixa acknowledges, the final paycheck for each month included a payment for gross commissions that were calculated for the *prior* month. Accounting for these payments, Mr. Freixa creates a chart in his brief, claiming that when these commission payments are apportioned over the preceding four weeks, there were individual weeks in July and November 2014 where the regular rate of pay did not reach 1.5 times the minimum wage.  For example, Mr. Freixa's chart makes the following conclusions regarding July and August 2014:

| Week Start | Week End | Salary | Comm. Allocated | Hours | Reg. Rate | 7(i) Compliant |
|---|---|---|---|---|---|---|
| 7/5/2014 | 7/11/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 7/12/2014 | 7/18/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 7/19/2014 | 7/25/2014 | 500.00 | 0 | 60 | 8.33 | No |
| 7/26/2014 | 8/1/2014 | 500.00 | 137.16 | 60 | 10.62 | No |
| 8/2/2014 | 8/8/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/9/2014 | 8/15/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/16/2014 | 8/22/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |
| 8/23/2014 | 8/29/2014 | 500.00 | 960.13 | 60 | 24.34 | Yes |

*Id.*

Mr. Freixa's chart represents a sleight-of-hand, conflating timing of payment with an analysis of whether or not he was an exempt employee. Simply put, there is no requirement under the FLSA that Mr. Freixa be paid weekly, or even monthly. In fact, Prestige could have decided to pay Mr. Freixa once every two months. *See Marshall v. Allen-Russell Ford, Inc.*, 488 F. Supp. 615, 618 (E.D. Tenn. 1980) ("[a] pay period can be one week, two weeks, or a month [] or . . . even longer.")

Using the data in the above chart, if Prestige had – as is its right – implemented a two-month pay period, it would have provided Mr. Freixa with a total check of $7,977.68 at the end of August. And, the chart would look as follows:

12

| Week Start | Week End | Salary | Comm. Allocated | Hours | Reg. Rate | 7(i) Compliant |
|---|---|---|---|---|---|---|
| 7/5/2014 | 7/11/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 7/12/2014 | 7/18/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 7/19/2014 | 7/25/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 7/26/2014 | 8/1/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 8/2/2014 | 8/8/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 8/9/2014 | 8/15/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 8/16/2014 | 8/22/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |
| 8/23/2014 | 8/29/2014 | 500.00 | 497.21 | 60 | 16.62 | Yes |

In other words, Mr. Freixa seeks to penalize Prestige for deciding to pay out commissions the last pay period of every single month, rather than the last pay check of every two-month period.[4]  However, there is simply no basis on which to require such a frequency of payments.  In fact, in *Marshall*, a case involving the calculation of minimum wage for commissioned sales workers, the court expressly recognized that commissions should be averaged over the entire pay period, because:

> Averaging of good and bad weeks within the same pay period is unavoidable.  Under the theory of plaintiff, paying commission salesmen on a bi-weekly basis would be illegal, because a bad first week would be averaged into a good second week. This, in the opinion of the Court, is not what the law, or even what the Labor Department's official policy, says.

---

[4] For example, in order to qualify as an exempt executive, administrative, or professional employee under the FLSA, "an employee must be compensated on a salary basis at a rate of not less than $455 per week."  29 C.F.R. § 541.600(a).  Importantly, just as commissions may be apportioned over various periods of time for purposes of the Retail Sales exemption (*see infra* at section B.3), for purposes of determining the salary basis test, "[t]he $455 a week may be translated into equivalent amounts for periods longer than one week."  29 C.F.R. § 541.600(b).

488 F. Supp. at 618.

Mr. Freixa's theory thus creates a situation where he would have been exempt if Prestige had merely chosen to pay its employees less frequently. This approach makes no sense. Based on his job and his significant earnings, Mr. Freixa was exempt under the Retail Sales exemption, regardless of when or how frequently he was paid. As the remainder of this brief confirms, the district court, like many other courts addressing the 7(i) exemption has likewise concluded commissions may be apportioned over a significant period of time when determining whether the regular rate of pay is more than one-and-a-half times minimum wage.

## C. AT ALL TIMES, MR. FREIXA'S REGULAR RATE OF PAY EXCEEDED ONE-AND-A-HALF TIMES THE MINIMUM WAGE

Because it was not practicable or even possible to allocate the commissions that Mr. Freixa earned over each workweek, the district court was correct in holding that it was appropriate to average the commissions Mr. Freixa earned over the course of his employment for the purpose of determining his regular rate of pay. D.E. 74 at 5. During his approximately one year of employment, Mr. Freixa earned well over 1.5 times the minimum wage, even after receiving every benefit of the doubt about how many hours he worked. Mr. Freixa therefore was not entitled to overtime pay on top of the more than $70,000 he earned in approximately one year working for Prestige because he properly qualifies as

exempt under the 7(i) exemption.  This Court should therefore affirm the district court's decision granting Prestige summary judgment and dismissing Mr. Freixa's overtime claim.

### 1.    Mr. Freixa Earned Well Above 1.5 Times the Minimum Wage Throughout His Employment.

Given that Florida's minimum wage was $7.93 in 2014 (FLA. DEP'T OF ECON. OPP., *supra* at 4) Mr. Freixa's regular rate needed to be $11.90 per hour or more to satisfy the Retail Sales exemption.  At various points during the litigation, Mr. Freixa made different allegations as to the number of hours he worked per week.  In his complaint, Mr. Freixa alleged an average of 60 hours per week.  D.E. 1 ¶ 17.  Indeed, the district court and Mr. Freixa's appellant brief use 60 as the weekly hours number for their calculations.  D.E. 74 at 5; Freixa Br. at 6.  However, even assuming that Mr. Freixa worked an average of 70 hours every single week for 50 weeks, he was still paid well above 1.5 times the minimum wage.  Assuming 70 hour weeks, Mr. Freixa would have needed to be paid $41,650 ($11.90 times 3,500 hours) during his employment to satisfy the second requirement.

Mr. Freixa's earnings not only satisfied this requirement, but Mr. Freixa also earned almost $30,000 above the $41,650 requirement.  In fact, he was paid a total of $70,343.03 during his employment with Prestige.  D.E. 42-2 at 104: 8- 25; D.E. 36-6; D.E. 42-6.  Mr. Freixa's hourly rate – again, assuming that he worked 50

weeks of 70 hours each – was $20.10 per hour ($70,343 divided by 3,500 hours). Or, using the 60 hours-per-week figure, which Mr. Freixa admits was "adopted for summary judgment purposes" (Freixa Br. at 6), he earned $23.45 per hour ($70,343 divided by 3,000 hours) – almost double the required $11.90 threshold. Thus, there is no question that Mr. Freixa earned more than 1.5 times the minimum wage throughout his employment.

### 2. Given the Nature of Mr. Freixa's Commissions, It Was Proper to Average His Earnings Over a Longer Period of Time to Determine His Regular Rate.

Because Mr. Freixa earned significantly more than 1.5 times the minimum wage on average throughout his employment, the only remaining issue is whether it was permissible to average the pay and commissions that Mr. Freixa received for the purposes of determining his regular rate.  As the district court recognized, it was not practicable or possible to allocate Mr. Freixa's commissions over each workweek given the way commissions were structured, so averaging his commissions over the course of his employment was a "reasonable and equitable method" for determining his regular rate of pay.  D.E. 74 at 5.  At no time in the litigation below or in Mr. Freixa's appellant brief does he argue or provide any support for the proposition that the method of averaging his commissions was not "reasonable and equitable."

### a.    Allocating Mr. Freixa's Commissions Over Each Workweek Was Not Practicable or Possible.

Mr. Freixa's final paycheck every month included a payment representing commissions on "gross bookings" for the preceding month.  D.E. 42-8.  In determining gross bookings, Prestige took the total number of bookings in a given month and subtracted cancellations of cruises that were booked in previous months.  D.E. 42-14 at 65:12-25; 68:18-23.  The FLSA regulations expressly permit these sort of "deferred commission payments" and allow employers to use "some other reasonable and equitable method" to allocate commissions if "it is not possible or practicable" to allocate them among individual workweeks.  *See* 29 C.F.R. § 778.120.

Prestige did not apply one fixed commission amount to each sale made by PVCs.  Instead, the percentage of the total sale amount ("commission percentage multiplier") used to calculate commissions for each sale varied depending on the number of gross bookings in a month.  D.E. 42-8.  In determining gross bookings, Prestige took the total number of bookings in a given month and subtracted cancellations of cruises that were booked in previous months.  D.E. 42-14 at 65:12-25; 68:18-23.

For example, in June 2014 a PVC who had three or fewer "gross bookings" that month would earn no commissions for each sale, whereas that same individual would earn 1.25% of the total commissionable sale amount for each cruise sale if

17

he had five gross bookings that month, and would earn 3.45% on each cruise sale if he had 31 gross bookings that month.  *Id.*; D.E. 42-14 at 54:1-22.  Additionally, the gross bookings in a month for purposes of calculating commission percentage multipliers  would be reduced by the number of any previously sold cruises that were cancelled and refunded to the customer.  D.E. 42-14 at 65:12-25; 68:18-23.

Because commission percentage multipliers increased as the number of sales increased, and because of the effect of cancellations on the multiplier, it was not possible for Prestige to determine the monetary amount of commissions generated by the sale of a particular cruise sale on the same day that cruise was sold.  *See* D.E. 42-8; D.E. 42-14 at 54:1-22.  For example, if Mr. Freixa sold his first cruise of the month on June 2, 2014, there would have been no way of knowing on June 2 whether:

- Mr. Freixa would sell no more cruises that month, and thus earn no commission for the June 2 sale;

- Mr. Freixa would sell four more cruises that month, and thus earn a 1.25% commission for the June 2 sale;

- Mr. Freixa would sell 30 more cruises that month, and thus earn a 3.45% commission for the June 2 sale;

- Mr. Freixa would sell some other number of cruises that month and have a different commission percentage multiplier allocated to the June 2 sale; or

- Whether Mr. Freixa's sales from previous months would be cancelled, thus decreasing the multiplier allocated to the June 2 sale.  *See id.*

18

Therefore, there was no feasible way to trace a proportion of each commission payment to a specific workweek retrospectively in this case.

Because cancellations make it difficult to trace sales to a particular workweek or even a particular month, it was not only reasonable but also necessary to average Mr. Freixa's commissions over a longer period of time to determine his regular rate of pay.

### b. The District Court Recognized that a Week-by-Week Calculation Was Not Proper in this Case.

As he also contends in this appeal, Mr. Freixa argued before the district court that his regular rate of pay did not equal at least 1.5 times the minimum wage during weeks in which he did not receive commission payments. D.E. 74 at 3-4. The district court correctly rejected this argument.

As the district court explained, "averaging the total base pay and commissions across Plaintiff's employment hours is a 'reasonable and equitable method' by which to resolve Plaintiff's hourly regular rate of pay." D.E. 74 at 5 (quoting 29 C.F.R. § 778.120, which permits any "reasonable and equitable method" for apportioning commissions). The district court emphasized that it was "'not possible or practicable to allocate'" Mr. Freixa's commissions over each of his workweeks because he "received lump-sum commission payments for cruise vacation sales he completed in prior weeks." *Id.* at 4 (quoting 29 C.F.R. § 778.120). The district court also stressed that a week-by-week calculation for Mr.

Freixa "neglects that commissions were not paid until several weeks' worth of sales were made." *Id.* at 4-5.

Mr. Freixa claims that "no record evidence was submitted by Prestige establishing that it was impossible or impracticable to allocate Freixa's commissions over the weeks in which the commissions were earned." Freixa Br. at 8. But this is wrong. The commission sales plans as well as testimony explaining the calculation of gross bookings and the effect of cancellations on commission multipliers all were part of the district court record. *See* D.E. 42-8; D.E. 42-14 at 54:1-22; 65:12-25; 68:18-23.[5] The district court thus had considerable undisputed record evidence to support its conclusion that it was not feasible to allocate Mr. Freixa's commissions over each individual workweek.

Therefore, this Court should affirm the district court's decision that averaging the commissions that Mr. Freixa received over the course of his employment for the purpose of determining his regular rate of pay was proper under the FLSA.

_____

[5] Mr. Freixa also claims that Prestige "admitted that Freixa's commissions should have been apportioned over the workweeks in the month that the commissions were earned." Freixa Br. at 8. This is also incorrect. In its response to Mr. Freixa's Interrogatory No. 6, Prestige simply explained that commission payments reflected cruise vacations booked during the previous month. D.E. 42-16 at Response No. 6. Prestige did not, however, admit or in any way suggest that Mr. Freixa's commissions "should have been appointed" on a monthly basis for the purpose of determining his regular rate.

**3.    As a Matter of Law, Averaging is a Reasonable and Equitable Method for Determining the Regular Rate of Pay.**

Courts within this Circuit and elsewhere have consistently held that averaging is permitted to calculate the regular rate where, as here, commissions cannot be traced back to specific workweeks.  Mr. Freixa improperly represents that this Court has already decided that averaging is not permitted for calculating the regular rate.  Freixa Br. at 17-18.  But he misreads the law and relies on cases that involve commission payment structures that can easily be traced back to individual workweeks or cases that do not even deal with the Retail Sales exemption.  In addition to mischaracterizing the Eleventh Circuit's position on averaging, Mr. Freixa also overstates the U.S. Department of Labor's (the "DOL's") authority on this issue.

**a.    Courts Have Consistently Permitted Averaging for Commissioned Sales Employees.**

*i.    District Courts in this Circuit Have Approved of Averaging.*

In addition to the district court's opinion in this case, other courts in this Circuit have approved of averaging the commissions that employees received over the course of their employment to determine their regular rate of pay.  *See Forster v. Smartstream, Inc.*, No. 3:13-cv-866-J-PDB, 2016 U.S. Dist. LEXIS 1148, at *22-23 (M.D. Fla. Jan. 6, 2016) (plaintiff's regular rate of pay was $13.74 per hour over 45 weeks, where he alleged working 60 hours per week on average);

*Henriquez*, 2013 U.S. Dist. LEXIS 179592, at *8-9 (plaintiff's regular rate of pay was $25.77 per hour over 128 weeks, where he alleged working 48 hours per week on average); *Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258, 1268 (N.D. Ala. 2012) (plaintiff's regular rate of pay was $17.63 per hour over five months, assuming 60-hour workweeks, where he alleged working 50-60 hours per week on average).

Mr. Freixa's attempts to distinguish these cases fail. Unlike much of the authority that Mr. Freixa puts forth, *Forster*, *Henriquez*, and *Kuntsmann* each involve the 7(i) exemption and squarely address the issue of how to determine the regular rate when work hours vary and commissions cannot be traced to individual workweeks.

With respect to *Forster*, Mr. Freixa argues that the case is distinguishable, noting that during the employee's 45 weeks of employment, he "received the bonuses intermittently and the record is silent as to what bonuses apply to what weeks." Freixa Br. at 34 (quoting *Forster*, 2016 U.S. Dist. LEXIS 1148, at *22.) However, an analysis of the facts confirms that *Forster* actually is quite similar to the instant case. Like Mr. Freixa, the employee in *Forster* earned commissions and "did not provide the Court with a week-by-week breakdown of the commissions paid, which appear to have been paid *monthly*. . ." *Id.* at *22, 23 n.13 (emphasis added).

With these facts, *Forster* held that averaging was permissible and noted that there "is persuasive authority holding averaging is appropriate for commissioned work." *Id.* (citing *Walton*, 786 F.2d at 307).  Just as commissions were paid on a monthly basis in *Forster*, Mr. Freixa received commission payments on a monthly basis, at the end of the month after the commissions were tallied based on gross bookings.

*Forster* therefore <u>bolsters</u> Prestige's argument that Mr. Freixa's commission payments could not be apportioned to each workweek – it is not enough that the *time periods* in which commissions were earned can be identified if they cannot be traced back to specific workweeks.  In this case, like in *Forster*, one "cannot determine individual weekly rates of pay if it were inclined to do so."  *Id.* at *23 n.13.  Thus, Mr. Freixa fails to distinguish *Forster* from this case in any meaningful way.

Mr. Freixa's attempts to distinguish *Henriquez* and *Kuntsmann* similarly fail.  In both of those cases, the court found that it was appropriate to add up the employees' total compensation, including commissions, and average that amount over the number of total weeks worked to determine their weekly compensation. *Henriquez*, 2013 U.S. Dist. LEXIS 179592, at *8-9; *Kuntsmann*, 903 F. Supp. 2d at 1268.  Neither court inquired whether the employee fell below 1.5 times the minimum wage in any particular workweek.  Rather, it was sufficient in both cases

that the employees <u>on average</u> received well more than 1.5 times the minimum

throughout their employment.  *Id.*  Mr. Freixa is exempt from overtime under the

7(i) exemption for the very same reasons in this case.

Mr. Freixa also argues that *Rodriguez v. Home Heroes, LLC*, No. 8:13-cv-

2711-T-26AEP, 2015 U.S. Dist. LEXIS 18769 (M.D. Fla. Feb 17, 2015) supports

his argument that averaging commissions is improper in the 7(i) context.  Freixa

Br. at 33.  However, *Rodriguez* merely cites to the general rule under the FLSA

that employers typically may not average hours performed by *non-exempt*

employees over two or more weeks for the purposes of determining eligibility for

overtime pay.  *See* 29 C.F.R. § 778.104.  That regulation stands for the proposition

that an employer may not avoid overtime liability if an employee works more than

40 hours in one week because he or she works less than 40 hours in a subsequent

week.  *Id.*  If Mr. Freixa was a non-exempt employee, entitled to overtime, that

regulation would apply.  But, it does not apply when determining *whether* he was

exempt.

The *Rodriguez* court, which issued no holding on the question of averaging,

ultimately denied the employer's motion for summary judgment as to whether the

7(i) exemption applied because a material factual dispute over how many hours the

plaintiff worked made it impossible to determine his regular rate.  *Rodriguez,* 2015

U.S. Dist. LEXIS 18769, at *23. This case, by contrast, does not hinge on a dispute over the hours that Mr. Freixa worked.

Therefore, as authority in this Circuit demonstrates, because there is no practical way to trace back each commission payment to a particular workweek, it was appropriate for the district court to average the commissions that Mr. Freixa received over the course of his employment for the purpose of determining his regular rate.

ii.    *Courts Outside this Circuit Have Allowed Averaging.*

There is also ample case law outside of the Eleventh Circuit that permits averaging over multiple workweeks to calculate the regular rate of pay.

Most importantly, the Seventh Circuit found that for purposes of the 7(i) exemption, it was proper to divide a sales employee's "total compensation by her total hours" to determine her regular rate where she was paid on a commission basis. *Walton*, 786 F.2d at 307. [6] The court went further and concluded that it is unlikely that in enacting the Retail Sales exemption, Congress requires the sort of week-by-week calculation that Mr. Freixa suggests is mandatory:

---

[6] Because the Seventh Circuit is the only federal appellate court, to Prestige's knowledge, to have decided this issue, this Court should not lightly create a circuit split by reversing the district court. *See, e.g., United States v. Games-Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012) ("[T]he circuits have historically been loath to create a split where none exists.").

> Commission salesmen have fluctuating hours and income, and **it is unlikely that Congress meant to require employers to pay overtime in the lean weeks when the fat weeks more than make up**. Other cases have used periods as long as a year to establish average wages. *See Triple "AAA" Co. v. Wirtz*, 378 F.2d 884, 887 (10th Cir. 1967).

*Id.* (emphasis added).

Mr. Freixa argues that *Walton* was "completely devoid of legal analysis." Freixa Br. at 20.[7]  This is incorrect.  *Walton* relied on *Triple "AAA" Co.*, a case addressing how to determine the regular rate for employees who earned a salary and worked varying hours each week.  378 F.2d at 886-87.

Mr. Freixa attempts to dismiss *Triple "AAA" Co.* on the grounds that the employees in that case "were paid a fixed salary each week."  Freixa Br. at 20. However, Mr. Freixa fails to point out that the employees in *Triple "AAA" Co.* worked varying hours, between 38 and 46 hours per week.  *Id.* at 886.  The court held that the trial court appropriately found that "each employee had worked at least an average of forty-four hours per week" and divided the employees' total, fixed salaries by 44 hours to determine their weekly compensation, even though the employees' actual hours worked fluctuated above and below 44 hours per

---

[7] Mr. Freixa also notes that in *Glenn v. General Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988), this Court "disagreed with" *Walton* on a separate issue.  Freixa Br. at 20.  While true, this is of no consequence.  The *Glenn* court simply noted that a circuit split existed over the meaning of "willfulness" under the Equal Pay Act.  *Glenn*, 841 F.2d at 1572.

week. *Id.* at 887. *Triple "AAA" Co.* thus supports the *Walton* court's conclusion that averaging, as opposed to a week-by-week calculation, is permitted to determine the regular rate of pay.

Likewise, in *Schwind v. EW & Associates, Inc.*, the court found that it was "reasonable and equitable" to average the commissions that the plaintiff earned each year and allocate them evenly to each workweek because he "was paid only after defendants were paid by their customers." 371 F. Supp. 2d 560, 568 (S.D.N.Y. 2005). The court emphasized that 29 C.F.R. § 778.120 permits "*any* method" to determine the regular rate "so long as it is 'reasonable and equitable.'" *Id.* (citing 29 C.F.R. § 778.120) (emphasis added).

Here, like in *Schwind*, Mr. Freixa received commission payments after sales were made. This timing issue along with the fact that commission percentage multipliers were not fixed, but varied based on total sales and calculations, made it impossible for Prestige to allocate the payments over individual workweeks. Mr. Freixa attempts to distinguish *Schwind* on the grounds that the employee was paid on "a fluctuating irregular schedule." Freixa Br. at 34. But this distinction has no legal significance. Regardless of whether the *Schwind* plaintiff's schedule fluctuated, the key issue was that like here, payments could not be traced to specific workweeks.

Further, none of the federal district court opinions cited by Mr. Freixa to distinguish *Schwind* involve commission payment structures like Prestige's. In *Selz v. Investools, Inc.*, there was no indication of any practical difficulty in tracing the employee's commission payments to each respective workweek. *See* No. 2:09-CV-1042 TS, 2011 U.S. Dist. LEXIS 9364, at *30 (D. Utah Jan. 27, 2011) (noting that the "only reason it is unclear" whether the regular rate exceeded 1.5 times the minimum wage was because time records were inaccurate). Still, the *Selz* court recognized that it is appropriate for courts to average a sales employee's commissions over a longer period, such as on a yearly basis, where it is "not possible to establish an hourly rate of pay for any given week due to the delay in commissions being paid out." *Id.* at *29-30 (discussing *Schwind*, 371 F. Supp. 2d 560).

For the same reason, *Owopetu v. Nationwide CATV Auditing Services, Inc.*, No. 5:10-cv-18, 2011 U.S. Dist. LEXIS 24948 (D. Vt. Mar. 11, 2011) is not on point. Like in *Selz*, the *Owopetu* court did not give any reason that the employee's commissions could not be allocated on a weekly basis. The court stressed that the employer "not only submitted all of Mr. Owopetu's hours and compensation broken down on a weekly basis, it has also calculated Mr. Owopetu's hourly rate for each week of his employment." *Id.* at *32. *Owopetu* therefore does not call into question *Schwind's* central holding that commissions may be averaged over a

longer period in certain circumstances, such as where the deferred nature of commission payments make it impossible to trace them back to specific workweeks.  *See id.*

Finally, *Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.*, 246 F. Supp. 2d 886 (S.D. Ohio 2003) contains no indication that there was any practical difficulty in allocating the employees' commissions among specific workweeks.   Indeed, the *Viciedo* court did not even address 29 C.F.R. § 778.120 or other authorities that permit any "reasonable and equitable" method for determining the regular rate if commissions cannot be traced back to individual workweeks.  *See id.* at 894-96.

> ### iii.    Contrary to Mr. Freixa's Assertions, This Court Has Never Decided the Issue of Averaging.

Mr. Freixa argues that there is "binding authority from this Circuit" demonstrating that that the regular rate of pay must be "determined on a workweek basis."  Freixa Br. at 17.  But he misstates the law.  The three cases Mr. Freixa cites in support of this proposition are inapposite.

In *Klinedinst*, this Court reversed the district court's grant of summary judgment in favor of the employer because the parties disagreed about the number of hours that a commissioned employee worked, and therefore it could not determine whether his regular rate exceeded 1.5 times the minimum wage.  260

F.3d at 1256-57.[8]  Unlike here, where Mr. Freixa's commissions were subject to a varying multiplier based on cruise vacations sold in the prior month as well as cancellations of cruises, the employee in *Klinedinst* was paid a flat commission based on the amount that customers were charged for each paint job that he performed.  *Id.* at 1253.  The employee's commissions could therefore easily be determined and traced back to each respective workweek.

Moreover, the *Klinedinst* Court never held – or even stated – that the regular rate must be calculated on a weekly basis.  Instead, as part of a discussion of the factual dispute over number of hours worked, it made the observation that the employee may not have earned at least 1.5 times the minimum wage "in any given week."  *See id.* at 1257.

This Court thus had no occasion to decide whether there are circumstances in which a commissioned sales employee's commissions may be calculated over a longer period of time.  Accordingly, *Klinedinst* does not control this case and certainly does not prohibit the averaging approach utilized by the district court in granting summary judgment in favor of Prestige.  In fact, as described above and

---

[8] In this case, the number of hours that Mr. Freixa worked is not in dispute for the purposes of summary judgment because he earned at least 1.5 times the minimum wage even if he worked 70 hours every week – the upper range of his varying estimates, which would total 3,500 hours during his 50 weeks of employment.  Indeed, Mr. Freixa could have worked up to *5,911 hours total*, or *118 hours per week*, and he still would have satisfied the regular rate requirement by earning more than 1.5 times the minimum wage on average ($70,343 divided by $11.90 per hour).  *See* D.E. 42-2 at 104: 8- 25; D.E. 36-6; D.E. 42-6.

contrary to Mr. Freixa's assertion that *Klinedinst* prohibits averaging, several other cases in this Circuit – *Forster*, 2016 U.S. Dist. LEXIS 1148, *Henriquez*, 2013 U.S. Dist. LEXIS 179592, and *Kuntsmann*, 903 F. Supp. 2d 1258 – have utilized the averaging approach post-*Klinedinst*.

Mr. Freixa also claims that the district court's averaging of his commission payments was "contrary to" this Court's decision in *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985).  Freixa Br. at 18.  However, that case did not involve, address, or even reference the 7(i) exemption.  Instead, *Olson* involved an analysis of whether a *non-exempt* car salesman's commission payments could be averaged for the purposes of satisfying the minimum wage.  *Id.* at 1578-79.  In *Olson*, unlike here, there was no dispute that the employee was non-exempt and entitled to minimum wage and overtime pay.  *Olson* thus has no bearing on this case.

Mr. Freixa similarly misstates the holding of a pre-1981 Fifth Circuit case, which involved a yacht salesman who worked "irregular hours" and was "paid strictly on a commission basis."  *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188, 189 (5th Cir. 1974).[9]  Mr. Freixa improperly characterizes that case as

---

[9] Fifth Circuit decisions from September 30, 1981 and earlier are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

having "held" that an employee is not exempt from overtime pay "merely because the annual payment" he receives exceeds the overtime rate.  Freixa Br. at 19.

But Mr. Freixa neglects to mention that *Brennan* did not deal with the Retail Sales exemption and that the Court expressed "no opinion" as to "whether the trial judge's *annual interval* might be appropriate" for determining the employee's regular rate of pay in the ordinary, non-exempt context.  *Brennan*, 493 F.2d at 191 (emphasis added).  All the *Brennan* Court decided was that it was not *automatically* appropriate to average the commissions an employee earns over the course of a year for determining his regular rate – provided that he actually worked overtime hours, which had not been established by the trial court.  *Id.* at 190-91. The Court remanded to the district court to determine a "reasonable and equitable" method of allocating the employee's commissions  given that his compensation and pay intervals fluctuated and he received deferred commission payments.  *Id.* (quoting 29 C.F.R. § 778.120 (1971)).  *Brennan* thus left open the appropriateness of averaging a *non-exempt* sales employee's commissions annually to determine his regular rate of pay and did not call into question averaging in the 7(i) context.

### b.     The DOL's Authority Permits Averaging in the 7(i) Context. [10]

In addition to 29 C.F.R. § 778.120 and the bulk of case law permitting averaging in the 7(i) context, the DOL's authority similarly confirms that averaging is appropriate in analyzing Mr. Freixa's exempt status.  Chapter 21 of the DOL's Field Operations Handbook makes clear that a "week-by-week determination" for determining the regular rate is unnecessary if the employee consistently earns more than 1.5 times the minimum wage:

> **Regular rate determinations under section 7(i)(1).**
> **(a)** A week-by-week determination of the regular rate for purposes of section 7(i)(1) is not necessary if the earnings are consistently and obviously higher than required to meet the test. . . .

DOL, FIELD OPERATIONS HANDBOOK, ch. 21h03(a) (Apr. 7, 2016), *available at*

https://www.dol.gov/whd/FOH/FOH_Ch21.pdf.

This provision ("Subpart A") is exactly on point here.  Mr. Freixa "consistently and obviously" earned more than 1.5 times the minimum wage throughout his employment.  Indeed, Mr. Freixa earned nearly double the

---

[10] 29 CFR Parts 778 and 779 are "interpretive bulletins," as opposed to regulations promulgated through notice-and-comment rulemaking.  As such, they do not have the force of law and are not entitled to deference but rather may only be relied on to the extent that they are persuasive.  Freixa Br. at 23 (citing *Howard v. City of Springfield*, 274 F.3d 1141, 1146 (7th Cir. 2001)).  This Court has also noted that other DOL materials, including the Field Operations Handbook and opinion letters, similarly are not entitled to deference but rather are entitled to "respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only "to the extent that those interpretations have the power to persuade."  *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).

minimum wage assuming, as the district court did, that he worked an average of 60 hours per week.[11]  *See* D.E. 36-6; D.E. 42-6.  Accordingly, this is precisely the situation where a week-by-week analysis is unnecessary and not required.

In its amicus brief, the DOL takes the position that Mr. Freixa did not "consistently and obviously" earn over 1.5 times the minimum wage because he fell below that threshold for two months in which he did not receive commission payments.  DOL Br. at 13 n.7.  But the DOL's interpretation of Chapter 21 of its Field Operations Handbook would make Subpart A meaningless because a week-by-week analysis would *always* be required based on its position.  But in Subpart A, the DOL itself states that a week-by-week analysis is "not necessary" where a commissioned sales employee earns "consistently and obviously higher" than 1.5 times the minimum wage.  FIELD OPERATIONS HANDBOOK, ch. 21h03(a).  This can only mean that when an employee's earnings *on average* are consistently above the threshold, it is unnecessary to analyze his earnings each week for the purpose of determining the regular rate.

Following Subpart A, the Filed Operations Handbook also contains Subpart B, which provides that:

---

[11] Mr. Freixa clearly earned well above 1.5 times minimum wage even under his claimed 70-hour workweeks.

> In determining whether or not the employee's regular
> rate of pay is in excess of one and one-half times the
> minimum hourly wage . . . the employer may divide the
> employee's total earnings attributed to the pay period by
> the employee's total hours worked during such pay
> period.

FIELD OPERATIONS HANDBOOK, ch. 21h03(b).  The DOL claims that Subpart B

means that averaging of commissions is limited to averaging over the employer's

pay period.  But, all that Subpart B does is provide one method of determining the

regular rate of pay, explaining that an employer "may" use this method.  However,

requiring averaging over a pay period would nullify Subpart A, which makes it

clear that a week-by-week determination is not required when like here, an

employee earns significantly way more than 1.5 times the minimum wage on a

consistent basis.

Relying on the general principle that the FLSA "takes a single workweek as

its standard" (*see* 29 C.F.R. § 778.104), Mr. Freixa claims that averaging

commissions earned over two or more workweeks is not permitted for determining

his regular rate.  Freixa Br. at 23.  However, to be clear, Prestige is arguing that

Mr. Freixa was exempt under the 7(i) exemption and not entitled to any overtime at

all – it is not making the argument that Mr. Freixa worked less than 40 hours some

weeks and should therefore be able to offset hours from weeks in which he worked

more than 40 hours.  Thus, 29 C.F.R. §§ 778.104, 778.106, 778.109, and other

general regulations that govern how to compensate *non-exempt* employees are not

35

at issue in this case because they have no bearing on whether averaging is permitted for determining whether the 7(i) exemption is satisfied.

Mr. Freixa's emphasis on 29 C.F.R. §§ 778.118, 778.119, and 779.419 is likewise misplaced because those regulations do not deal with the situation where it is impracticable to allocate commissions among workweeks.  None of these regulations call into question the use of a "reasonable and equitable method," such as averaging to allocate commissions, where it is not feasible to trace payments to individual workweeks.  *See* 29 C.F.R. § 778.120.

Additionally, Mr. Freixa makes much of the fact that section 7(i) of the FLSA uses the term "workweek."  But the statute says nothing about how to allocate commissions for determining the regular rate of pay, and Mr. Freixa's interpretation of the statute is at odds with the DOL's own interpretation of the statute in 29 C.F.R. § 778.120 and the Field Operations Handbook.  If it were "abundantly clear that section 7(i)(1) must be evaluated on a workweek basis" (Freixa Br. at 17), then the DOL would have never needed to issue a regulation governing "[d]eferred commission payments not identifiable as earned in particular workweeks."  29 C.F.R. § 778.120.  Mr. Freixa's reading of 29 U.S.C. § 207(i) would make 29 C.F.R. § 778.120 superfluous as well as make it impossible for companies like Prestige that provide deferred commission payment plans to ever be able to satisfy the 7(i) exemption.

## D. THERE IS NO BASIS FOR REQUIRING MONTHLY AVERAGING OF COMMISSIONS

### 1. Mr. Freixa Waived His Argument that Commissions Must be Allocated on A Monthly Basis.

In the district court, Mr. Freixa argued that the regular rate must be calculated separately for every single workweek and that averaging is never allowed.  D.E. 42 at 16; D.E. 46 at 17; D.E. 59 at 4.  Even the Labor Department, in its amicus brief, acknowledges that Mr. Freixa's argument to the district court was flat "wrong."  DOL Br. at 27-28 n. 13 ("Freixa's argument before the district court that each commission should have been allocated to the workweek in which it was paid … was also wrong under the Department's regulations.").

Now, having apparently abandoned his earlier argument and tacitly conceded that the commissions he earned cannot be traced back to each workweek, Mr. Freixa puts forth a new argument that his commissions needed to apportioned evenly across workweeks on a *monthly* basis.  Freixa Br. at 29-31.  Mr. Freixa's brand new argument on appeal is improper and must be disregarded by this Court. *See Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) (on appeal a party may not "argue a different case from the case she presented to the district court.").

37

Mr. Freixa's new interpretation of 29 C.F.R. § 778.120, [12] the applicable regulation governing deferred commission payments, is at odds with his summary judgment briefing before the district court.  Mr. Freixa argues before this Court that the district court erred because it failed to "apportion[] the commissions over the prior month as required."  Freixa Br. at 29.  He claims that 29 C.F.R. § 778.120 applies to the 7(i) context and permits allocating commissions evenly across workweeks from the previous month, by averaging them to determine the regular rate.  *Id.* at 30.  However, this is not what Mr. Freixa argued before the district court.

In his summary judgment reply brief, Mr. Freixa argued that the FLSA "expressly prohibits" averaging over *two or more workweeks* to determine the regular rate.  D.E. 59 at 4.  He further argued that 29 C.F.R. § 778.120 only comes into play when determining overtime compensation for employees "to whom overtime is in fact being paid" but does not govern whether the regular rate of pay is sufficient to satisfy the 7(i) exemption.  *Id.*  These arguments are plainly inconsistent with Mr. Freixa's arguments in his appellate brief, and this Court should refuse to consider Mr. Freixa's new interpretation of 29 C.F.R. § 778.120, which he failed to raise with the district court.

---

[12] 29 C.F.R. § 778.120 allows "some other reasonable and equitable method" for allocating commissions where it is "not possible or practicable" to allocate commissions among

This Court "has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *FTC v. Abbvie Prods. LLC*, 713 F.3d 54 (11th Cir. 2013) (quoting *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)).  If this Court regularly addressed questions that "districts court never had a chance to examine," it would not only "waste [its] resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.*

Here, Mr. Freixa is arguing a different case than the one he presented to the district court.  Because Mr. Freixa asserted to the district court that 29 C.F.R. § 778.120 only applies to "commissioned employees who are actually being paid overtime wages,"  (D.E. 59 at 4) he is foreclosed from arguing to this Court that the regulation means the opposite and deals with whether the exemption applies in the first place.  Accordingly, to the extent Mr. Freixa argues that the district court erred in its interpretation of 29 C.F.R. § 778.120 by not allocating his commissions on a monthly basis, he has waived that argument.

## 2.    <u>There is No Basis to Require a Monthly Allocation of Commissions.</u>

Even if this Court were to consider Mr. Freixa's new argument, as explained above, when it is not practicable to allocate commissions among each workweek,

---

individual workweeks.

the DOL's regulations permit any "reasonable and equitable method" for apportioning commissions. 29 C.F.R. § 778.120. Mr. Freixa is wrong in his implication that 29 C.F.R. § 778.120 requires calculating commissions on a monthly basis when commissions cannot be traced to particular workweeks. *See* Freixa Br. at 31. The regulation uses "1 month" as an example, but this is an example of what "methods *may* be used" – it does not rule out allocating commissions over a longer time period. *See* 29 C.F.R. § 778.120(a) (emphasis added). Simply put, neither the regulation or any interpreting authority set forth a one month requirement for allocating commissions.

Even looking past Mr. Freixa's inconsistent arguments – that averaging is never allowed but sometimes permitted on a monthly basis – a fair reading of 29 C.F.R. § 778.120 makes clear that the regulation is not as rigid as Mr. Freixa argues. The regulation is inherently flexible in allowing "some other reasonable and equitable method" for the purpose of determining an employee's regulate rate if commissions cannot feasibly be traced to specific workweeks:

> If it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted.

29 C.F.R. § 778.120.

The regulation goes on to illustrate, again, what "methods *may* be used" to allocate commissions over multiple workweeks. *Id.* (emphasis added). It does not, however, state that the examples of allocating commissions evenly across each workweek over one month (under subpart a of the regulation) or evenly across each hour worked over the commission computation period (under subpart b) are the only two ways in which it is "reasonable and equitable" to allocate commissions over multiple workweeks.

Mr. Freixa therefore misreads 29 C.F.R. § 778.120 to the extent that he implies that the two methods provided in the regulation are the only two "reasonable and equitable" ways to allocate commissions over multiple workweeks. In fact, the DOL has recognized since as early as 1966 that in the 7(i) context, "depending upon the facts of the situation, a week to week analysis *may* be proper" but that "a longer period based on the commission period may be acceptable" as well. DOL, Wage & Hour Div., Opinion Letter, 1966 DOL WH LEXIS 161, at *2-3 (Aug. 10, 1966) (emphasis added). Mr. Freixa cites opinion letters from 1971 and 2005 in which the DOL stated that commissions should be traced back to particular workweeks. Freixa Br. at 25-26. But the DOL opinion letters, which address factually different situations than Mr. Freixa's, do not provide that the two methods for calculating the regular rate over multiple

41

workweeks listed in 29 C.F.R. § 778.120 are the only permissible methods for doing so.

The 1971 opinion letter cited by Mr. Freixa acknowledges that 29 C.F.R. § 778.120 applies in the 7(i) context and that "some other reasonable and equitable method" besides a week-by-week approach may be used where it is difficult to ascribe commissions to specific workweeks. DOL, Wage & Hour Div., Opinion Letter, 1971 WL 33072, at *1 (May 27, 1971). As Mr. Freixa acknowledges, however, the DOL found in that particular instance the earnings applicable to a particular workweek were "ascertainable." Freixa Br. at 26. The 1971 opinion letter therefore is not persuasive here, where the amount in commissions that Mr. Freixa earned each workweek cannot be ascertained.

The 2005 DOL opinion letter cited by Mr. Freixa is similarly inapposite because it involved an issue having nothing to do with averaging or the regular rate requirement more generally. That totally separate issue was whether an employer could use a quarterly computation period for determining whether 50% or more of a commissioned sales worker's income was from commissions pursuant to 29 U.S.C. § 207(i)(2). DOL, Wage & Hour Div., Opinion Letter, 2005 WL 3308615, at *1 (Oct. 24, 2005). There was no suggestion in the 2005 opinion letter that there was any difficulty in allocating commissions among particular workweeks. Nor was there any analysis of that issue. *See id.*

42

Additionally, Mr. Freixa's case law cited for the proposition that there are only two "reasonable and equitable" ways to determine the regular rate under 29 C.F.R. § 778.120 does not support his position.  For example, the court in *Jelus v. All Creatures Animal Hospital, Inc.* noted that the employer's apportionment of commissions evenly across all hours worked by an employee was "one of two methods expressly approved by the DOL regulations," but it did not decide whether other methods would also have been acceptable.  No. 1:15-cv-184 (WOB), 2016 U.S. Dist. LEXIS 69858, at *15 (S.D. Ohio May 27, 2016).

Mr. Freixa also cites *Vazquez v. TWC Administration LLC*, 2:14-cv-07621-CAS(FFMx), 2015 U.S. Dist. LEXIS 59527 (C.D. Cal. May 4, 2015) for the proposition that "commissions may be apportioned over all of the workweeks in the month in equal amounts" if it is "not possible or practicable to allocate the commissions to the actual workweek in which it was earned."  Freixa Br. at 31.  In *Vazquez*, the employer calculated commissions on each monthly "Scorecard cycle," which "ran from the 19th of one month to the 18th of the following month." 2015 U.S. Dist. LEXIS 59527, at *5.  The plaintiffs argued that the employer should have divided commission payments "across the hours within a Scorecard cycle" rather than among workweeks, but the court rejected this argument.  *Id.* at *27.  Crucially, the court found that the plaintiffs "effectively concede that commissions could not practicably be allocated to the workweeks in which the

commissions were 'actually' earned" given that they argued for an equal division of commissions across hours worked. *Id.* at *31. While the plaintiffs argued that that allocating commissions hourly "would have resulted in plaintiffs being paid a few more dollars per year," the court rejected the argument that employers must use the "best possible" method for allocating commissions, concluding:

> Simply put, where commission cannot be precisely allocated to the workweeks in which it was earned, **the regulation on which plaintiffs rely does not require that an employer use the best possible estimation method from an employees' perspective,** but rather one that is reasonable and equitable.

*Id.* at *31-32 (emphasis added).

Therefore, Mr. Freixa's suggestion that averaging his commission payments over the course of his one-year employment is not the "best possible" method of allocating commissions is immaterial. Instead, what matters is that Prestige's method for allocating Mr. Freixa's commissions was "reasonable and equitable" and legal under 29 C.F.R. § 778.120. As the record evidence relied upon by Judge Cook established, Mr. Freixa earned more than $70,000 over the course of his employment, which is well above 1.5 times the minimum wage for every hour worked during his employment. Thus, a week-by-week analysis is not necessary. *See* FIELD OPERATIONS HANDBOOK, ch. 21h03(a). Under these circumstances, it was appropriate to average Mr. Freixa's commission payments for the proposes of calculating his regular rate of pay under the Retail Sales exemption.

### E. THE DEPARTMENT OF LABOR'S AMICUS BRIEF IS NOT ENTITLED TO DEFERENCE AND IS NOT PERSUASIVE

The DOL submitted an amicus brief supporting Mr. Freixa's position in this case.  That brief largely rehashes the same arguments that are contained in Mr. Freixa's brief.  However, it bears noting that:  (1) the DOL's interpretation of the 7(i) exemption in its amicus brief is not entitled to deference; and (2) the additional authority cited by the DOL is unpersuasive.

### 1.    Courts Do Not Defer to Agency Positions Articulated in Amicus Briefs.

As an initial matter, an agency's interpretation of a statute articulated in an amicus brief is "entitled to, at most, *Skidmore* deference."[13]  *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1279 (11th Cir. 2012) (citing *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1305 (11th Cir. 2008)).  However, such deference is "undoubtedly inappropriate" when "the agency's interpretation is plainly erroneous or inconsistent with the regulation," "conflicts with a prior interpretation," or "it appears that the interpretation is nothing more than a convenient litigating position."  *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (internal quotation marks and quoting citations omitted).

---

[13] Under *Skidmore*, courts give agency interpretations articulated in informal documents like amicus briefs deference only to the extent that such materials have the "power to persuade." 323 U.S. at 140.

Here, the DOL supports Mr. Freixa's position that commissions should have been allocated monthly for purposes of determining whether the regular rate exceeded 1.5 times minimum wage.  (DOL Br. at 22-25.)  However, this position is inconsistent with the DOL's own regulations and their other authority interpreting the 7(i) exemption – including 29 C.F.R. § 778.120, Chapter 21 of DOL's Field Operations Handbook, and its opinion letter from 1966, all of which contemplate averaging in a "reasonable and equitable" manner when it is not feasible to allocate commissions to each workweek.  Therefore, while the DOL's present stance on the 7(i) exemption may be a convenient litigating position, its amicus brief lacks persuasive effect and is not entitled to any deference.

## 2.    The DOL's Arguments and Authority Do Not Change the Analysis.

The DOL argues that the district court's decision would permit an employer to pay a commissioned sales employee "for weeks upon weeks" below 1.5 times the minimum wage as long as her average pay is above the threshold, and that the employee could earn below the threshold if she quits or is terminated.  DOL Br. at 2-3.  That argument does not apply to Mr. Freixa's situation and is contrary to the DOL's Field Operations Handbook, which endorses such averaging.  *See* FIELD OPERATIONS HANDBOOK, ch. 21h03(a).

Mr. Freixa was not an employee who earned barely above 1.5 times the minimum wage and who only satisfied the threshold some weeks.  Here, Mr.

Freixa "consistently and obviously" earned more than the threshold throughout his employment, and Mr. Freixa has not alleged that he ever earned less than the threshold, on average, at any time during his employment. *See id.* The DOL's concerns are thus unfounded.

Moreover, much of the DOL's amicus brief relies on the same inapposite authority cited by Mr. Freixa in his brief. However, the DOL cites some additional authority, none of which is binding or persuasive. The agency refers to substantial case law dealing with minimum wage and overtime pay in general, which is not relevant to the very specific and well defined three-prong test of the 7(i) exemption. *See* DOL Br. at 13-16. Prestige will focus on the cases that involve the 7(i) exemption.

While the district court in *Takacs v. A.G. Edwards & Sons, Inc.* found that the regular rate must be determined each week, it was unnecessary for the court to even opine on this issue because the employer "used an incorrect rate equation" for calculating the plaintiffs' pay that put its evidence on what they relied into doubt. 444 F. Supp. 2d 1100, 1114 (S.D. Cal. 2006). Similarly, the DOL relies on two cases where employees earned commissions that were easily ascertainable and traceable to a particular workweek. *See Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 430 (N.D.N.Y. 2014); *Wagner v. ABW Legacy Corp, Inc.*, No. CV-13-2245-PHX-JZB, 2016 WL 880371, at *1 (D. Ariz. Mar. 8, 2016). These cases

did not involve sales employees who earned deferred commission payments that varied based on total number of sales, and the employer did not argue that there was any difficulty in tracing commission payments to individual workweeks. *See id.* Unlike here, in those two cases it was indeed possible and practicable to allocate commissions among individual workweeks. There was thus no basis for invoking 29 C.F.R. § 778.120.

Not only is the DOL's amicus brief entitled to no deference, since it is contrary to its own regulations and other authority, it also fails to cite any new authority that calls into question the appropriateness of averaging to determine the regular rate for employees like Mr. Freixa. Therefore, as a matter of law, Mr. Freixa was properly classified exempt from overtime under the Retail Sales exemption.

## CONCLUSION

For the foregoing reasons, the Appellees therefore respectfully request that this Court affirm the summary judgment in their favor.

*s/ Mark J. Neuberger*
Mark J. Neuberger
Florida Bar No. 982024
mneuberger@foley.com
Larry S. Perlman
Florida Bar No. 0091934
lperlman@foley.com
Foley & Lardner LLP

2 South Biscayne Boulevard, Suite 1900
Miami, Florida  33131-2132
Telephone:  (305) 482-8400
Facsimile:  (305) 482-8600

Attorneys for Appellee

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that: (1) this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 10,860 words (according to the word-count function of the word-processing program used to prepare this brief), excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and (2) this brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) because it has been prepared in 14-point proportionately spaced typeface using Microsoft Word, the Times New Roman type style.

*s/ Mark J. Neuberger*
Mark J. Neuberger

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record and

that a true and correct copy of Brief of Appellees has been furnished by Federal

Express to counsel of record:

Sam J. Smith
Loren B. Donnell
Burr & Smith, LLP
111 2nd Ave. N.E., Suite 1100
St. Petersburg, Florida 33701

Keith M. Stern
Law Office of Keith M. Stern, P.A.
8333 N.W. 53rd St., Suite 450
Doral, Florida 33166

Robert S. Norell
Robert S. Norell, P.A.
7350 N.W. 5th St.
Plantation, Florida 33317-1605


                                                      *s/ Mark J. Neuberger*
                                                      Mark J. Neuberger