# CASE NO. 16-13745

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

SEAN FREIXA
Plaintiff/Appellant,

v.

PRESTIGE CRUISE
SERVICES LLC, et al.,
Defendants/Appellees.

Appeal From the United States District Court
For The Southern District Of Florida
Case No. 15-22732-Civ-Cooke/Torres

_____

## APPELLANT'S REPLY BRIEF
_____

Sam J. Smith
Loren B. Donnell
Tamra C. Givens
BURR & SMITH, LLP
111 2nd Ave. N.E., Suite 1100
St. Petersburg, Florida  33701
813-253-2010

Keith M. Stern
LAW OFFICE OF KEITH M.
STERN, P.A.
8333 N.W.  53rd St., Suite 450
Doral, Florida  33166
(561) 299-3703

Robert S. Norell
ROBERT S. NORELL, P.A.
7350 N.W. 5th St.
Plantation, Florida   33317-1605
(954) 617-6017

Attorneys For Appellant

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and 11th

Cir. R. 26.1-1, Plaintiff/Appellant Sean Freixa hereby submits this Certificate of

Interested Persons and Corporate Disclosure Statement:

Boutwell, Angelica Leigh – Attorney for Defendant/Appellee Prestige Cruise

Services LLC

Burr & Smith, LLP – Attorneys for Plaintiff/Appellant Sean Freixa

Cooke, Marcia G. – District Court Judge, Southern District Florida, Miami

Division

Donnell, Loren B. - Attorney for Plaintiff/Appellant Sean Freixa

Foley & Lardner, LLP - Attorneys for Defendant/Appellee Prestige Cruise

Services LLC

Freixa, Sean – Plaintiff/Appellant

Givens, Tamra - Attorney for Plaintiff/Appellant Sean Freixa

Law Offices of Keith M. Stern, P.A. - Attorneys for Plaintiff/Appellant Sean

Freixa

Neuberger, Mark J. – Attorney for Defendant/Appellee Prestige Cruise Services

LLC

Norell, Robert Scott – Attorney for Plaintiff/Appellant Sean Freixa

Perlman, Larry S. – Attorney for Defendant/Appellee Prestige Cruise Services LLC

Prestige Cruise Services LLC - Defendant/Appellee

Robert S. Norell, P.A. - Attorneys for Plaintiff/Appellant Sean Freixa

Romhilt, Dean – Attorney for U.S. Department of Labor, Amicus Curiae

Smith, Sam – Attorney for Plaintiff/Appellant Sean Freixa

Stern, Keith Michael - Attorney for Plaintiff/Appellant Sean Freixa

Torres, Edwin G. – Magistrate Judge, Southern District Florida, Miami Division

U.S. Department of Labor – Amicus Curiae

# **TABLE OF CONTENTS**

**I.      PRESTIGE FAILED TO ESTABLISH THAT IT WAS NOT POSSIBLE OR PRACTICABLE TO ALLOCATE THE COMMISSIONS EARNED BY FREIXA TO THE WORKWEEKS IN WHICH THEY WERE EARNED** .....................1

**II.     PRESTIGE'S AVERAGING OF FREIXA'S COMMISSIONS IS IMPROPER** ......................................................................................................... 6

      A.      The Court Must Determine Whether Freixa Was Paid In Excess Of One and One Half Times Minimum Wage To Determine Whether He Was Exempt Under Section 7(i) ................................................................................................ 6

      B.      Prestige Improperly Focuses On The Timing Of Payments Rather Than On The Allocation Of Commissions ....................................................................... 8

**III.    DOL REGULATIONS AND GUIDANCE SUPPORT FREIXA'S POSITION THAT HIS COMMISSIONS MUST BE APPORTIONED BY WORKWEEK** .................................................................................................. 14

**IV.    THE AMICUS BRIEF SUBMITTED BY THE DOL SHOULD BE GIVEN PERSUASIVE WEIGHT** ................................................................... 18

**V.     FREIXA DID NOT WAIVE HIS ARGUMENT THAT COMMISSIONS HE WAS PAID SHOULD BE ALLOCATED TO THE WORKWEEKS IN WHICH THEY WERE EARNED** ............................................................................... 20

**CONCLUSION** ......................................................................... 24

**CERTIFICATE OF COMPLIANCE** ........................................................... 24

**CERTIFICATE OF SERVICE** ................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188 (5th Cir. 1974) ...................................... 12

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................. 7

*Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355 (11th Cir. 1984) ................................... 23

*Forster v. Smartstream, Inc.*, No. 3:13-cv-866, 2016 WL 70605 (M.D. Fla. Jan. 6, 2016) ......... 10

*Henriquez v. Total Bike, LLC*, No. 13-20417-CIV, 2013 WL 6834656
   (S.D. Fla. Dec. 23, 2013) .................................................................................. 10

*Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251 (11th Cir. 2001) ........................ 1, 11, 12, 19

*Marshall v. Allen-Russell Ford, Inc.*, 488 F. Supp. 615 (E.D. Tenn. 1980) ................................. 9

*Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294 (N.D.N.Y. 1978) ................................... 7

*Morse v. Equity Lifestyle Properties Inc.*, No. 2:13-cv-00408, 2014 WL 1764927
   (S.D. Ind. April 30, 2014) ................................................................................. 18

*Narey v. Dean*, 32 F.3d 1521 (11th Cir. 1994) ............................................................. 23

*Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985) ..................................... 12

*Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217 (11th Cir. 2010) ............................... 20

*Rappaport v. U.S. Communications, Inc.*, No. 08-60935-CIV-DIMITROULEAS
   (S.D. Fla. Aug, 25, 2009) .................................................................................. 17

*Rodriguez v. Home Heroes, LLC*, No. 8:13-cv-2711-T-26AEP, 2015 WL 668009
   (M.D. Fla. Feb. 17, 2015) .............................................................................. 10, 11

*Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624 (D. Md. 2005) .................................. 5, 15

*Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560 (S.D.N.Y. 2005) ..................................... 13

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ............................................................. 19

*Triple "AAA" Co. v. Wirtz*, 378 F.2d 884 (10th Cir. 1967) ................................................. 12

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986) ....................................... 11

**Other Authorities**

Department of Labor, Wage and Hour Division Admr. Op. Letter, 1971 WL 33072 (May 27, 1971) ................................................................................................................................ 19

Department of Labor, Wage and Hour Division Admr. Op. Letter, 2005 WL 3308615 (October 24, 2005) ............................................................................................................................. 19

U.S. Department of Labor Field Operations Handbook ....................................................... 16, 17

**Regulations**

29 C.F.R. § 106 .......................................................................................................................... 8

29 C.F.R. § 541.601 ................................................................................................................... 6

29 C.F.R. § 778.104 ........................................................................................................ 11, 17, 20

29 C.F.R. § 778.106 .................................................................................................................. 15

29 C.F.R. § 778.109 ............................................................................................................. 14, 17

29 C.F.R. § 778.119 ............................................................................................................. passim

29 C.F.R. § 778.120 ............................................................................................................. passim

29 C.F.R. § 779.419 ............................................................................................................. 14, 17

I.    **PRESTIGE FAILED TO ESTABLISH THAT IT WAS NOT POSSIBLE OR PRACTICABLE TO ALLOCATE THE COMMISSIONS EARNED BY FREIXA TO THE WORKWEEKS IN WHICH THEY WERE EARNED**

It is well established that the employer "bears the burden of proving the applicability of a FLSA exception by clear and affirmative evidence." *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (quotation marks omitted). In the district court below, Prestige made no attempt to show that it had complied with the section 7(i)(1) requirement that Freixa's regular rate of pay exceeded one and one-half times the federal minimum wage rate in each workweek during his employment. Instead of complying with its counsel's instructions in July 2012 to record the time worked by Personal Vacation Consultants ("PVCs") like Freixa, Doc. 42-12,[1] at 41:4-24, Prestige failed to keep time records of the hours worked by PVCs, including Freixa, and instead of complying with its counsel's understanding that section 7(i)(1) requires that "the regular rate of pay must exceed one and a half times the applicable minimum wage for every hour worked in a work week in which overtime hours were recorded," Doc. 42-12, at 57:7-15, Prestige asserted that it complied with the regular rate requirement of section 7(i) by dividing all of the pay earned by Freixa during his entire

---

[1] While Freixa cited the deposition of Jill Guidicy, Prestige's General Counsel and Vice President (Doc. 42-12), in its opening brief and to the district court, this deposition was inadvertently omitted from Appellant's Appendix. It is included in Appellant's Reply Appendix.

employment by all of the hours it assumed Freixa worked during his employment.[2]
*See* Doc. 36, at 4-5; Doc. 37, at ¶¶ 7, 14.

In its Motion for Summary Judgment, Doc. 36, at 4-5, and its Statement of
Material Facts in Support thereof, Doc. 37, ¶¶ 7, 14, Prestige did not assert that it
was "not possible or practicable" to allocate the commissions it paid Freixa
pursuant to its deferred commission plan to the workweeks during which they were
earned. *See* 29 C.F.R. § 778.120. In its Summary Judgment Reply Brief, Prestige
merely asserted that because Freixa "received commissions payments the month
after he earned them," and that his commission payment "represented a percentage
of the value of the total number of cruise vacations that he sold during the <u>previous</u>
<u>month</u>," that this made it somehow not possible or practicable to allocate the
commission among workweeks during which they were earned. *See* Doc. 55, at 3
(emphasis in original). No affidavits, declarations, or depositions were cited to
support the proposition that it was not possible or practicable to allocate the
commission payments to the workweeks in the prior month when they were
earned.

The District Court cited to Prestige's summary judgment reply brief and held
that "it is 'not possible or practicable to allocate' Plaintiff's commissions by each

---

[2] This calculation ignored the fact that Freixa's regular rate was less than one and
one-half the minimum wage during workweeks worked in July and November
2014 because he earned no commissions for July and November 2014. Doc. 42-7
(Freixa Sales Production Bookings).

workweek since he received lump-sum commission payments for cruise vacation sales he completed in prior weeks." Doc. 74, at 4.  As set forth in the Department of Labor's ("DOL's") Amicus Brief, "commissions are often paid on a basis other than weekly." DOL Amicus Brief, at 23.  As detailed in Appellant's opening brief, at 12-13, 24-25 and 29 and in the DOL's Amicus Brief, at 23-28, when sales employees are paid deferred commissions at a subsequent date when the commission payments are ascertained, the DOL's regulations provide that commissions earned over a monthly period are "apportioned back over the workweeks of the period during which they are earned."  29 C.F.R. § 778.119. Only "[i]f it is not possible or practicable to allocate the commissions among the workweeks of the period in proportion to the amount of commission actually earned or reasonably earned or presumed to be earned each workweek," may "some other reasonable and equitable method" be adopted.  *See* 29 C.F.R. § 778.120.

Prestige provided no citation to any evidence in the district court to meet its burden to show that it was not possible or practicable to allocate the commissions earned by Freixa to the workweeks in which they were earned.  Instead, Prestige admitted that the commissions were earned in the month prior to when they were paid, *see* Doc. 42-16, at 9-10 (Answer to Interrogatory No. 6) and provided no

argument or citation to any factual support for why the commissions could not be allocated to the workweeks during the month they were earned.

On appeal, for the first time, and without any factual support, Prestige now argues that because "cancellations make it difficult to trace sales to a particular workweek or even a particular month, it was not only reasonable but also necessary to average Freixa's commissions over a longer period of time to determine his regular rate." Appellee Brief, at 19.

The impact of cancellations on the commission plan should be disregarded because no factual evidence has been submitted supporting this argument.  The only evidence submitted on appeal is deposition testimony cited on page 18 of Appellee's Brief, Doc. 42-14 at 65:12-25 and 68:18-23.  These citations merely indicate that the number of bookings considered in determining the commission took into account "cancellations from previous months."  Prestige cites no testimony (or other evidence) supporting its assertion that such cancellations somehow made it not possible or practicable to allocate the commissions to the month in which they were earned.[3]  In any event, cancellations were taken into account on the dates the commissions were paid.  *See* Doc. 42-7 (showing that

---

[3] In its summary of argument, Prestige misrepresents the record when it provides citation to the deposition of Jessica Crlenjak to support its argument regarding cancellations by attributing to her the following facts not contained in her deposition: (1) that "passenger cruises are usually booked months in advance," and (2) "customers often cancel planned vacations." *See* Appellee's Brief, at 7.

commissions are ascertainable at the time of the commission payments).  To the extent cancellations occurred after the date of the payment of the commission, such subsequent cancellations would have had no impact on months when Freixa earned no commissions, such as July and November 2014, since any subsequent cancellations could not reduce his commissions since there were already zero. "The thrust of § 778.119 is that, in situations where the calculation and payment of the commission cannot be completed until after the regular pay day, the employer can disregard the commission in determining the regular pay rate until the amount of the commission can be ascertained." *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 632–33 (D. Md. 2005).  "Once the amount can be ascertained, it must be 'apportioned back over the workweeks of the period during which it was earned.'" *Id*. (quoting 29 C.F.R. § 778.119).

The questions that Prestige asserts need to be answered to ascertain the amount of the commissions on page 18 of Prestige's Appellee Brief are answerable on the date of payment in July for commissions earned in June, including the number of cruises sold, the percentage applicable to the sales bookings, and whether any prior sales from previous months were cancelled.  Therefore, the commissions paid in July were ascertainable in July and should have been allocated to the weeks worked in June when the commissions were earned.

Accordingly, Prestige has not met its burden of showing the commission payments

could not have been allocated to the weeks in which they were earned.

## II.    PRESTIGE'S AVERAGING OF FREIXA'S COMMISSIONS IS IMPROPER

### A.    The Court Must Determine Whether Freixa Was Paid In Excess Of One and One Half Times Minimum Wage To Determine Whether He Was Exempt Under Section 7(i)

Stripped down to its core, Prestige's argument why it should not be liable for

failing to pay Freixa overtime for various workweeks during his employment is a

non-legal argument.  Rather than examining the legal requirements of 7(i) – the

provision which Prestige is using to shield itself from liability– Prestige attempts to

cry "no harm, no foul" because Freixa's total earnings with the company were

$70,000.[4]  Prestige admits as much, stating: "Based on his job and significant

earnings, Mr. Freixa was exempt under the Retail Sales exemption, regardless of

when or how frequently he was paid." Appellee Brief, at 14.  Prestige's position is

contrary to both the plain language of 7(i) and the Supreme Court's

acknowledgment that "failure to pay the statutory minimum on time may be . . .

detrimental to maintenance of the minimum standard of living necessary for the

---

[4]  Though not at issue in the instant case, the DOL regulations contain a separate exemption for "highly compensated" employees who earn total annual compensation of $134,004  or more (including commissions) and whose primary duty includes office or non-manual work. 29 C.F.R. § 541.601.  Contrary to Prestige's argument that Freixa had significant earnings, Freixa's earnings were only nearly half of the amount considered to be high compensation and strongly indicative of being exempt. *Id*.

health, efficiency and general well-being of workers . . . .  Employees receiving

less than the statutory minimum are not likely to have sufficient resources to

maintain their well-being until such sums are paid at a future date." *Marshall v.*

*Sam Dell's Dodge Corp*., 451 F. Supp. 294, 302 (N.D.N.Y. 1978) (quoting

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945) (internal quotations

omitted)).

Prestige accuses Freixa of conflating the issue of whether Freixa was exempt

from the issue of when and how much he was paid.  But it is how much Freixa was

paid that informs the question of whether Prestige can take advantage of the retail

sales exemption for a particular workweek, or whether it must pay overtime.

Rather than Freixa improperly conflating the two issues, Prestige improperly

attempts to separate them, since the amount Freixa earned during any workweek is

critical to determining whether the exemption is met.   Contrary to Prestige's

position, it is impossible to determine whether an employee is exempt from the

overtime pay requirement under section 7(i) without determining whether the

employee's regular rate of pay was in excess of one-and one half times minimum

wage during each workweek.  In addition, as the DOL discussed in its Amicus

Brief, the exemption may be met for some workweeks but not others. *See* DOL

Amicus Brief at 28-29.  During workweeks when Prestige failed to pay Freixa in

excess of one and one half times the minimum wage, Prestige did not meet the

requirements of the exemption and overtime compensation is owed to Freixa.

> B.     Prestige Improperly Focuses On The Timing Of Payments Rather
>        Than On The Allocation Of Commissions

Prestige argues that had it paid Freixa's commissions every other month

instead of every month, it would have been in compliance with 7(i), and that Freixa

seeks to penalize Prestige for choosing to pay out his commissions once a month

instead of every other month. Appellee Brief at p. 13.  Prestige also argues that

"there is simply no basis on which to require such a frequency of payments." *Id.*

Prestige's argument has no basis in the factual record since Prestige agreed to pay

Freixa a salary of $26,000 per year ($500 per week) plus monthly commissions

paid one month after they were earned.  Doc. 42-14, 46:3-17; 67:16-24.  While it

might have been possible to reach an agreement with Freixa and other PVCs to pay

their commissions every other month, the FLSA requires payment of overtime

compensation for commissions at the first point when these commissions can be

ascertained.  *See* 29 C.F.R. § 106 (overtime must be paid on the next payday after

the amount due can be determined).  Here, it is clear that in the month after the

commissions are earned, Prestige was able to ascertain the amount of the

commissions taking into account any sales made in the prior month and any

cancellations.  Doc. 42-14, 68:10-23.

Nevertheless, Prestige is incorrect that paying commissions every two months instead of monthly would have any different result. As Prestige acknowledges, the relevant issue is not the timing of payment, but the allocation of commissions to the workweeks in which they were earned. The record is devoid of evidence that Prestige could not allocate Freixa's commissions back to the workweeks in which they were earned. Accordingly, even if Prestige had paid Freixa his commissions every two months, the allocation of commissions would be the same, since they would be tied to the months in which they were earned rather than arbitrarily averaged over the two months.

Prestige's citation to *Marshall v. Allen-Russell Ford, Inc.*, 488 F. Supp. 615, 618 (E.D. Tenn. 1980), which is absent of legal authority, is unpersuasive. As discussed above, Freixa does not contend that Prestige's deferred commission plan is illegal, *per se*, or that Prestige was required to pay commissions any more or less frequently. Freixa's contention is that, whatever schedule Prestige chose to pay Freixa, his commissions must be allocated back to the workweeks in which they were earned such that overtime was due for pay periods in which the wage requirements of section 7(i)(1) were not met. As the *Marshall* court acknowledged, "each pay period must stand alone in determining whether the minimum wage was paid." *Id.* There is simply no basis in the law or in the factual

record for Prestige to average the commissions Freixa earned over the entire duration of his employment or for a two-month period.

Prestige's attempt to rely on inapposite caselaw is unpersuasive.  To avoid redundancy, Freixa refers the Court to its discussion of the caselaw in its initial briefing.  *See* Appellant Brief, at 28-35.  Prestige relies heavily on *Forster v. Smartstream, Inc.*, No. 3:13-cv-866, 2016 WL 70605 (M.D. Fla. Jan. 6, 2016) to support its argument that 7(i) can be satisfied by averaging Freixa's commissions over the duration of his employment.  As discussed in Freixa's initial brief, *Forster* has no bearing on the instant case because the factual record in *Forster* was silent as to what bonuses applied to what weeks.  In the instant case, the factual record does not support a finding that allocation of Freixa's commissions to the workweeks in which they were earned is impossible or impracticable.  To the contrary, Prestige identified the time periods during which the commissions were earned and they could easily have been apportioned over the workweeks during each monthly period.[5]

Prestige also cites *Rodriguez v. Home Heroes, LLC*, No. 8:13-cv-2711-T-26AEP, 2015 WL 668009 (M.D. Fla. Feb. 17, 2015) for the proposition that 29

---

[5] *Henriquez v. Total Bike, LLC*, No. 13-20417-CIV, 2013 WL 6834656, at *3 (S.D. Fla. Dec. 23, 2013), is also inapposite because the plaintiff never contested whether his regular rate was more than time and one-half the applicable minimum wage for each week in which overtime hours were worked, solely arguing that 7(i) did not apply because the payment method was really a "piece rate" system and did not involve commissions. No. 13-20417-CIV (S.D. Fla.), D.E. #54, at 9-11.

C.F.R. § 778.104 is inapplicable to Freixa's employment.  Prestige states that

section 778.104 is inapplicable because it applies only to non-exempt employees.

However, Freixa was non-exempt during July and November 2014 because, during

those months, he failed to meet the requirement in the retail sales exemption that

his wages and commissions exceed one and one half times minimum wage.

Additionally, *Rodriguez* does not support Prestige's contention that averaging of

Freixa's commissions was appropriate, since *Rodriguez* addressed only the issue of

whether is was appropriate to average plaintiff's hours over two or more

workweeks to derive his hourly rate and held that such averaging was

impermissible under FLSA's single workweek standard.  In addition, like

*Rodriguez,* summary judgment in favor of Prestige was error because Prestige

failed to record the hours worked by Freixa even after it was told it was required to

do so by its counsel. Doc. 42-12, at 80-83.

Prestige urges this Court to ignore its own authority in *Klinedinst v. Swift

Investments, Inc*., 260 F.3d 1251, 1256-57 (11th Cir. 2001), in favor of the Seventh

Circuit's decision in *Walton v. United Consumers Club, Inc*., 786 F.2d 303 (7th

Cir. 1986).  However, in *Walton*, the Seventh Circuit provided no statutory

analysis for its holding that there was no need to break down commissioned

salesmen's pay week by week because commissioned salesmen have fluctuating

hours and income.  The Seventh Circuit confused the requirement under section

7(i)(1) (regular rate must exceed one and one-half minimum wage each workweek) with section 7(i)(2) (more than half of an employees pay must be commissions for a representative period of up to one year).  The court cited only *Triple "AAA" Co. v. Wirtz*, 378 F.2d 884, 887 (10th Cir. 1967), which addressed the issue of how overtime is calculated for fixed salaried employees under the FLSA and did not address section 7(i).  *Klinedinst*, on the other hand, is controlling because, as discussed above, Freixa's commissions can be allocated to the workweeks in which they earned, and Prestige failed to meet its burden to show that an alternative method of allocation is necessary.

The Eleventh and former Fifth Circuit decisions in *Olson v. Superior Pontiac-GMC, Inc*., 765 F.2d 1570 (11th Cir. 1985) and *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188 (5th Cir. 1974), respectively, are consistent with Freixa's position that averaging of workweeks is improper.  Prestige attempts to distinguish *Olson* on the grounds that there was no dispute that the *Olson* plaintiff was non-exempt.  This distinction is immaterial to the holding in *Olson* that workweeks may not be averaged in order to avoid the obligation to pay overtime. 765 F.2d at 1574-75.  Likewise, while Prestige argues that *Lauderdale Yacht Basin* "left open the appropriateness" of an annual averaging of commissions, the former Fifth Circuit held that an employer "is not exempt from the payment of additional overtime merely because the annual payment an employee receives exceeds

12

minimum wage and minimum rate overtime payments.  493 F.2d at 190.  Since the

employees in *Lauderdale Yacht Basin* only received pay when they sold yachts, the

fluctuating compensation, fluctuating pay intervals, and deferred compensation

made it difficult to allocate the commissions among workweeks.  The Court

remanded the case to the district court to adopt a "reasonable and equitable

method" to allocate commissions earned to the workweeks in which they were

actually earned or reasonably presumed to have been earned.  *Id.* at 191.  In the

instant case, commissions can be allocated to the workweeks in which they were

actually earned or reasonably presumed to be earned.

Prestige also relies on *Schwind v. EW & Assocs., Inc*., 371 F. Supp. 2d 560

(S.D.N.Y. 2005), a district court case from outside of this Circuit in which

defendant's irregular and fluctuating payment of commissions made it impossible

to establish a regular rate of pay on a workweek basis.  *Schwind* actually lends

support to Freixa's position because *Schwind* is an exemplar of when averaging is

permissible under section 778.120.  Due to the employer's improper classification

of Schwind as an independent contractor and his working a fluctuating and

irregular schedule, the court in *Schwind* deemed it necessary to adopt a reasonable

and equitable method of allocation "given the unique circumstances involved in

this case, namely the fact that the plaintiff was not paid on a set schedule because

he worked solely on commission and was paid only after defendants were paid by their customers." *Id.* at 567.

### III. DOL REGULATIONS AND GUIDANCE SUPPORT FREIXA'S POSITION THAT HIS COMMISSIONS MUST BE APPORTIONED BY WORKWEEK

Prestige jumps directly to 29 C.F.R. § 778.120 as support for its method of calculation.  However, to get there, Prestige disregards every other DOL regulatory interpretation, as well as binding Eleventh Circuit precedent that requires that the regular rate for commissioned employees be determined on a workweek basis.

Prestige asserts that the DOL's interpretative sections 778.104, 778.106, and 778.109, which require a weekly analysis of the regular rate, are not applicable to determining whether the 7(i) exemption applies to Freixa.  Appellee Brief, at 35-36  However,  sections 778.104, 778.106, and 778.109 are included in Part 778 of the Department of Labor's Code of Federal Regulations, which are the official interpretations with respect of how to calculate the regular rate for purposes of section 7 of the FLSA, including section 7(i).  *See* 29 C.F.R. § 779.419(b) ("The computation of the regular rate for purposes of the Act is explained in part 778 of this chapter").

In fact, sections 778.104 and 778.109 not only require a workweek analysis, but expressly contemplate such an analysis for employees paid on a commission basis.  Prestige asks this Court to ignore these regulations as not applicable, but

fails to cite any case law or authority for this position.  Rather, Prestige's position

is contrary to the DOL's understanding of its own interpretations, *see* DOL Amicus

Brief, at 10-16 ("The Department, following the statutory language, has repeatedly

stated that the 7(i) exemption and its minimum pay requirement must be

determined on a workweek-by-workweek basis"), and is not supported by binding

precedent, *see* Appellant Brief, at 17-19; DOL Amicus Brief, at 16-20.

Section 778.106, which Prestige also asserts is irrelevant, acknowledges that

"at times overtime compensation cannot be determined until some time after the

regular pay period" but explains that "the requirements of the Act will be satisfied

if the employer pays the excess overtime compensation as soon after the regular

pay period as is practicable." 29 C.F.R. § 778.106.  It is understood, and not

disputed here, when in the case of commission payments, "the commission cannot

be completed until sometime after the regular pay day for the workweek . . . the

employer may disregard the commission in computing the regular hourly rate until

the amount of commission can be ascertained."  29 C.F.R. § 778.119.  However,

once ascertained, and "[w]hen the commission can be computed and paid, . . . it is

necessary, as a general rule, that the commission be apportioned back over the

workweeks of the period during which it was earned." *Id*; *see Rogers*, 362 F. Supp.

2d at 632–33 ("in situations where the calculation and payment of the commission

cannot be completed until after the regular pay day, the employer can disregard the

commission in determining the regular pay rate until the amount of the commission can be ascertained").

The DOL's Field Operations Handbook ("FOH"), ch. 21h03, does not change this analysis. The FOH is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance.[6] In providing guidance in the field for determining employee's regular rate under section 7(i)(1), the DOL stated that "[a] week-by-week determination of the regular rate for purposes of section 7(i)(1) is not necessary if the earnings are consistently and obviously higher than required to meet the test. However, situations may be encountered where the test is not clearly met and specific determinations of the regular rate for particular weeks are required." FOH, ch. 21h03(a). However, in this specific case, DOL has determined that Freixa's earnings were not "consistently and obviously higher than required to meet the test." DOL Amicus Br. at 13, n. 7. The DOL found:

> Freixa's $500 weekly salary alone was not more than one and one-half times the minimum wage considering his allegation that he worked 60-hour weeks and the fact that he was not paid any commissions in several months. **Thus, his earnings were not 'consistently and obviously' higher than one and one-half times the minimum wage, and 'specific determinations of the regular rate for particular weeks' were required.**

*Id.* (emphasis added).

---

[6] *See* Website, United States Department of Labor at https://www.dol.gov/whd/foh.

16

Confronted with the same argument, in *Rappaport v. U.S. Communications, Inc.*, No. 08-60935-CIV-DIMITROULEAS, D.E. 181 (S.D. Fla. Aug, 25, 2009), the court rejected the notion that the week-by-week determination of the regular rate is not necessary pursuant to FOH, ch. 21h03, when the evidence showed, as it does here, that in certain workweeks less than one and one-half times the minimum wage was paid. *See* Appellant Brief, at 5-6 (showing that during two months Freixa was paid zero commissions and only was paid $500 per week which is less than one and one-half times the minimum wage). The court denied the employer's motion for summary judgment pursuant to section 7(i) finding the employer failed to prove the employee earned in excess of one and one-half the minimum wage during all workweeks. *Rappaport*, No. 08-60935, D.E. 181, at 11-13.

Prestige argues that section 778.119 should be ignored, along with section 779.419 (which explains how the regular rate should be calculated for purposes of 7(i)), because it is impossible or impracticable for it to allocate commissions among Freixa's workweeks. Appellee Brief, at 36. However, first, Prestige must start with the general principle that the regular rate is calculated on a weekly basis. *See* 29 C.F.R. § 778.104, 778.109; *see also* 779.419 (in the context of section 7(i), "[t]he employee's 'regular rate' of pay must be computed, in accordance with the principles discussed above, on the basis of his hours of work in that particular workweek and the employee's compensation attributable to such hours."). Second,

if the commissions are not paid until sometime after the pay period, the DOL

directs Prestige to apportion the commissions over the workweeks during which

they were earned.  *See* 29 C.F.R. § 778.119.  Only "if" Prestige can prove that it

cannot apportion the commissions because "it is not possible or practicable to

allocate the commission among the workweeks of the period in proportion to the

amount of commission actually earned or reasonably presumed to be earned each

week"— then, Prestige must adopt a reasonable and equitable method to allocate

the commissions.  *See* 29 C.F.R. § 778.120.  Prestige has the burden of proving

that commissions cannot be allocated to the workweeks in which the commissions

were earned.  *See Morse  v. Equity Lifestyle Properties Inc.*, No. 2:13-cv-00408,

2014 WL 1764927, at *6 (S.D. Ind. April 30, 2014) (finding section "778.120 does

not apply to the calculation of [plaintiff's] commission-based overtime because

[the employer] kept records of the actual week in which commission payments

were made").  Prestige has admitted that the commissions were earned in the

month prior to their payment, and as such, cannot meet its burden to show it is not

possible or practicable to allocate these commissions to the workweeks during

which the commissions were earned.  Appellant Brief, at 2-3.

## IV.    THE AMICUS BRIEF SUBMITTED BY THE DOL SHOULD BE GIVEN PERSUASIVE WEIGHT

Ignoring the DOL's consistent position over the past 45 years, Prestige

argues that DOL's amicus brief is not entitled to any deference.  Since 1971, the

DOL has taken the position "that 7(i)(1) applies on a workweek basis" and that the "hourly rate averaged over the entire representative period may not be used to satisfy the requirements of section 7(i)(1)." *See* DOL WHD Admr. Op. Letter, 1971 WL 33072, at *1 (May 27, 1971). The DOL has maintained this position over the past four decades. *See e.g.,* DOL WHD Admr. Op. Letter, 2005 WL 3308615, at *1 (October 24, 2005).

This Court should find the DOL's opinion, regulations, opinion letters, and field handbook persuasive under *Skidmore.* In *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), the Supreme Court explained, "the rulings, interpretations and opinions of the Administrator . . ., while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." The weight given to an agency's position "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* As explained above, the DOL has taken a well-reasoned, consistent position for 45 years. There can be little doubt, given the agency's consistency in its interpretation of 7(i), that its opinion as set forth in the Amicus Brief has the power to persuade. *See Klinedinst*, 260 F.3d at 1255 ("Although the Field Operations Handbook is not entitled to Chevron deference, we find it persuasive"); *Polycarpe*

*v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1225 (11th Cir. 2010) (noting that

opinion letters are not binding on the court "but [that] we can accord respect to the

Agency's views and give it weight as a source of persuasive authority).

## V.    FREIXA DID NOT WAIVE HIS ARGUMENT THAT COMMISSIONS HE WAS PAID SHOULD BE ALLOCATED TO THE WORKWEEKS IN WHICH THEY WERE EARNED

Prestige is wrong that Freixa waived the argument that any commissions he

was paid must be allocated to the workweeks in which they were earned.  *See*

Appellee Brief, at 37-39.  In the district court, Prestige made no attempt to show

that it had complied with the section 7(i)(1) requirement that Freixa's regular rate

of pay exceeded one and one-half times the minimum wage rate in each workweek.

Instead, Prestige asserted that it complied with the regular rate requirement of

section 7(i) by dividing all of the pay earned by Freixa during his entire

employment by all of the hours it assumed Freixa worked during his employment.

*See* Doc. 36, at 4-5; Doc. 37, at ¶¶ 7, 14.

In its Appellee Brief, at 37, Prestige states that "Freixa argued that the

regular rate must be calculated separately for every single workweek and that

averaging is never allowed," citing to Doc. 42, at 16; Doc. 46, at 17, and Doc. 59,

at 4.  However, what Freixa actually stated is that the law "prohibits the averaging

of *hours* over the course of two or more weeks to calculate" an employee's regular

rate.  *See* Doc. 42, at 16 (emphasis added), citing 29 C.F.R. § 778.104; and Doc.

46, at 17 (emphasis added); Doc. 59, at 4.  Freixa argued that because Prestige did not maintain records of his actual hours worked during each workweek, Prestige could not meet its burden to demonstrate that Freixa's regular rate exceeded one and one-half times the minimum wage or $10.88 per hour during each workweek. *See* Doc. 42, at 16; Doc. 46, at 18.  In addition, Freixa argued that Prestige could not, as a matter of law, lump all of the commissions and salary paid to Freixa for an entire year to calculate an average rate.  Doc. 42, at 17; Doc. 46, at 19.  Freixa also argued that during months where he was paid no commissions, he was paid less than the required time and one-half minimum wage.  *Id*.  He explained that, at a minimum, he was entitled to judgment during the workweeks in July and November 2014 when no commissions were paid for the more than 40 hours or work performed during those weeks.  Doc. 42, at 18; Doc. 46, at 20.  This is the same argument asserted on appeal—that is, Freixa is claiming that he is entitled to judgment for overtime hours worked during the weeks he worked in the months of July and November 2014 because no commissions were earned in these months. *See* Appellant Brief, at 6.

Prestige also claims that Freixa asserted below that 29 C.F.R. § 778.120 could never apply in the section 7(i) context.  Appellee Brief, at p. 38.  To the contrary, Freixa argued that section 778.120 did not apply because Prestige failed to provide the court with any records of the precise sales dates that made up the

commissions which he was paid monthly and that this failure of proof meant that

Prestige had not met its burden of establishing "[i]f it is not possible or practicable

to allocate the commission among the workweeks of the period in proportion to the

amount of commission actually earned or reasonably presumed to be earned each

week, some other reasonable and equitable method must be adopted." Doc. 59, at

5.  On appeal, Freixa continues to assert that Prestige has not established that it is

not possible or practicable to allocate the commissions paid Freixa over the

workweeks he earned the commissions making section 778.120 inapplicable.  *See*

Appellant Brief, at 30 ("The district court provided no analysis to support its

holding that it was not possible or practical to apportion the commissions over the

workweeks in the month they were earned."); and Appellant Brief, at 5

("Commissions earned over a monthly period are 'apportioned back over the

workweeks of the period during which they are earned'").

 Further, even if Freixa's argument on appeal, which is that he is entitled to

judgment for overtime hours worked during the workweeks he earned no

commissions, had been raised on appeal for the first time (which it was not) the

law in this Circuit is not as rigid as Prestige argues.  This Circuit has identified five

exceptions to the rule:

> First, an appellate court will consider an issue not raised in the district
> court if it involves a pure question of law, and if refusal to consider it
> would result in a miscarriage of justice. Second, the rule may be
> relaxed where the appellant raises an objection to an order which he

> had no opportunity to raise at the district court level. Third, the rule
> does not bar consideration by the appellate court where the interest of
> substantial justice is at stake. Fourth, a federal appellate court is
> justified in resolving an issue not passed on below . . . where the
> proper resolution is beyond any doubt. Finally, it may be appropriate
> to consider an issue first raised on appeal if that issue presents
> significant questions of general impact or of great public concern.

*Narey v. Dean*, 32 F.3d 1521, 1526–27 (11th Cir. 1994), citing Dean *Witter*

*Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-61 (11th Cir. 1984) (footnotes and

citations omitted).

Here, clear error has occurred on a pure question of law where the district

court allowed Prestige to meet its obligations to pay one and one-half times

minimum wage in each workweek by calculating the regular rate paid to Freixa by

averaging all of the pay Freixa earned over his entire employment.  Prestige argues

that averaging commissioned sales workers' pay over all of the hours worked

during their employment is "reasonable and equitable."  However, such a ruling, if

allowed to stand, will gut the requirement in section 7(i)(1) of the FLSA that in

order to not pay overtime compensation to commissioned sales workers, employers

must pay these workers at least one and one-half times the minimum wage for each

workweek during which they worked overtime hours.  As the DOL stated, "[t]he

district court's decision undermines the minimum wage guarantee that the FLSA

provides to employees who are subject to the exemption by failing to require

compliance with the guarantee on a workweek-by-workweek basis."  DOL Amicus

Brief, at 2.  Accordingly, the Court should allow Freixa to provide the Court with his full argument that the District Court should not have calculated Freixa's regular rate by dividing all the pay earned by Freixa over his entire employment by all the hours he was assumed to have worked.

## **CONCLUSION**

For the foregoing reasons, Freixa seeks a remand to the district court with instructions that Freixa is entitled to judgment for overtime hours in weeks worked during July and November 2014 because he earned no commissions and was paid less than one and one-half minimum wage.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C), Appellants' reply brief utilizes 14-point font and contains 5,899 words.

/s/ Sam J. Smith
Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify I electronically filed the foregoing using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record and

that a true and correct copy of Appellant's Reply Brief has been furnished by

Federal Express to counsel of record:

> Angelica Leigh Boutwell
> Mark J. Neuberger
> Larry Scott Perlman
> Foley & Lardner, LLP
> 2 S Biscayne Blvd. Suite 1900
> Miami, FL 33131
>
> Dean Romhilt
> U.S. Dept. of Labor
> 200 Constitution Ave. N.W.
> Room N-2716
> Washington, DC  20210

> /s/ Sam J. Smith
> Sam J. Smith